Holland, Guardian, *v.* Taylor *et al.*

No. 12,829.

HOLLAND, GUARDIAN, *v.* TAYLOR ET AL.

LIFE INSURANCE.—*Mutual Benefit Associations.*—*Members Take Notice of By-Laws.*—*Certificate.*—*Contract.*—Mutual benefit associations are in the nature of mutual insurance companies, and persons who become members thereof are bound to take notice of the by-laws, the latter becoming a part of the contract the same as if written in the certificate.

SAME.—*Change of Beneficiary.*—*Provision of By-Laws.*—The beneficiary in a certificate issued by a mutual benefit association, providing for a change of beneficiary, does not, during the life of the assured, have an indefeasible right in the contract or fund to be paid thereunder; but such beneficiary has an interest which can only be defeated by a change effected in the manner provided by the by-laws.

SAME.—*Attempted Change of Beneficiary by Will.*—*Guardian.*—*Executors.*—*Control of Fund.*—Where the by-laws of a mutual benefit association, not a domestic corporation, provide for the payment of a sum of money to the dependents of a member, and fix definitely the manner of changing the beneficiary, upon the death of the assured, without making a change in the manner specified, the beneficiary named in the certificate becomes the absolute owner of the fund, unaffected by a will attempting to make a different disposition thereof, and, if the beneficiary is a minor under guardianship, the guardian is entitled to the possession and control of the money as against the assured's executors.

From the Marion Circuit Court.

*C. Byfield* and *L. Howland,* for appellant.

*V. Carter,* for appellees.

ZOLLARS, C. J.—On the 25th day of August, 1884, the Royal Arcanum, whose principal office and Supreme Council are in Boston, issued to Charles D. Taylor, of Indianapolis, a certificate in these words:

"ROYAL ARCANUM BENEFIT CERTIFICATE.

"This certificate is issued to Charles D. Taylor, a member of Hoosier Council No. 394, Royal Arcanum, located at Indianapolis, Ind., upon evidence received from said council that he is a contributor to the widows and orphans' benefit fund of this order, and upon condition that the statements made by him in his application for membership in said council, and the statements certified by him to the medical examiner,

both of which are filed in the Supreme Secretary's office, be made a part of the contract; and upon condition that the said member complies in the future with the laws, rules and regulations now governing said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund. The conditions being complied with, the Supreme Council of the Royal Arcanum hereby promises and binds itself to pay, out of its widows and orphans' benefit fund, to Samuel Taylor and Martin V. McGilliard (executors), for the benefit of Anna Laura Taylor (daughter), a sum not exceeding three thousand dollars, in accordance with and under the provisions of the laws governing the said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate: Provided, that the said member is in good standing in this order at the time of his death; and provided, also, that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of this order.

"In witness whereof, the Supreme Council of the Royal Arcanum has hereunto affixed its seal, and caused this certificate to be signed by its Supreme Regent, and attested and recorded by its Supreme Secretary, at Boston, Massachusetts, this 25th day of August, 1884.

"JOHN HASKELL BUTLER, Supreme Regent.

"Attest: W. O. ROBSON, Supreme Secretary."

On the back of the certificate is this form:

"Form of change of beneficiary. Council —, No. —, R. A. To —, 18—. Supreme Secretary S. C. R. A., I hereby surrender and return to the Supreme Council of the Royal Arcanum the written benefit certificate No. —, and direct that a new one be issued to me, payable to —.

"[Seal of sub-council.]          [Member's signature.]

"Attest:      ——— ———, Secretary."

The Royal Arcanum is governed by a constitution and by-

laws, sections two and three of the by-laws being as follows :

" Section 2. Each member shall enter upon his application the name or names of the members of his family, or those dependent upon him, to whom he desires his benefits paid, subject to such future disposal of the benefit among his dependents as the member may thereafter direct, and the same shall be entered in the benefit certificate according to said directions," etc.

" Section 3. A member may, at any time, when in good standing, surrender his benefit certificate, and a new certificate shall thereafter be issued, payable to such beneficiary or beneficiaries dependent upon him as such member may direct, upon the payment of a certificate fee of fifty cents."

On the 22d day of August, 1884, the day on which, as alleged in appellees' answer, Taylor applied for the above certificate, he made his will. In that will he recited as a fact, that he had in his possession a policy of life insurance for three thousand dollars, issued to him by the Royal Arcanum, and payable to Samuel Taylor and Martin V. McGilliard, his executors, for the benefit of his daughter, Anna Laura Taylor.

In another item of the will the testator directed that, in the event of his personal property being insufficient to pay his debts, the first interest or earnings of the life insurance fund should be applied to that object, the principal to remain intact.

In another item he directed that after his death the insurance fund should be collected by his " said administrators," and safely invested in real estate loans, and that the interest derived therefrom should be first used in the payment of his debts, and the remainder in the education of his daughter, Anna Laura, according to the best judgment of his " administrators ; " that in the event of his daughter being left motherless, the fund should be used for her benefit in accordance with the judgment of his " administrators ; " and that when

she should arrive at the age of twenty-one years, the fund, with accumulated interest, should be paid to her.

By another item of the will, and a codicil thereafter made, the testator directed that in the event of the death of his daughter before arriving at the age of twenty-one years, the insurance fund should be given and divided by his administrators, a certain portion to his wife, another portion to his father, another portion to a person neither related to, nor dependent upon, him; and still another portion to the American Baptist Home Mission Society.

In another item appellees, Samuel Taylor and Martin V. McGilliard, were designated as the executors of the will.

The assured and testator, Charles D. Taylor, died in February, 1885.

Subsequently, appellees were appointed and duly qualified as executors of the will, and collected the insurance fund from the Royal Arcanum. Subsequent to the death of the testator, also, appellant was appointed guardian of the person and estate of the daughter, Anna Laura.

In May, 1885, he filed his petition in the Marion Circuit Court, asking therein for an order upon the executors to pay over to him, as such guardian, the fund so collected by them from the Royal Arcanum.

That petition, and the answer thereto by the executors, state the facts substantially as above recited.

The court overruled a demurrer to the answer, and held that the executors were entitled to the fund, to be disposed of as the will directs.

The question for decision is, shall the benefit fund remain in the hands of the executors to be managed, disposed of, and distributed as the will directs, or ought it to be turned over to the guardian as the absolute property of the daughter, Anna Laura Taylor?

Upon a fair construction of the certificate, the by-laws of the order are a part of the contract. Therefore, by accepting the certificate, the member (Taylor) obligated himself to

comply with the by-laws, and agreed that payment should be made to the executors for the benefit of his daughter, unless the certificate should be surrendered by him, and another issued at his request, in accordance with the laws of the order.

He, and all concerned, would have been bound by the by-laws, even though there had not been such a reference to them in the certificate. Benevolent associations, such as the Royal Arcanum appears to be, are in the nature of mutual insurance companies. Persons who become members of such associations, and accept certificates, are bound to take notice of the by-laws ; they enter into and become a part of the contract the same as if they were written out in the certificate. *Bauer* v. *Samson Lodge, Knights of Pythias,* 102 Ind. 262.

Whatever rights beneficiaries have in life policies, they have by virtue of the contract between the insurance company and the assured. In the case of an ordinary insurance policy, the rights of the beneficiaries in the policy, and to the amount to be paid upon the death of the assured, are vested rights, vesting upon the taking effect of the policy. These rights can not be defeated by the separate, or the combined, acts of the assured and insurance company without the consent of the beneficiary. *Harley* v. *Heist,* 86 Ind. 196 (44 Am. R. 285), and authorities there cited; *Damron* v. *Penn Mutual Life Ins. Co.,* 99 Ind. 478, and cases there cited.

As in other cases, so here, whatever right or power Taylor, the assured, had to and over the certificate, was by virtue of the terms of the certificate and the by-laws of the order, which together constituted the contract between him and the order. And whatever rights the beneficiary, Anna Laura, had, or now has, to the fund to be, and in this case paid, upon the death of the assured, her father, she had, and has, by virtue of the same contract.

It should be observed that the Royal Arcanum is not a

domestic corporation, and hence not affected by section 3848, R. S. 1881. *Presbyterian Mutual Assurance Fund* v. *Allen,* 106 Ind. 593. If, then, the Royal Arcanum were to be treated as an ordinary life insurance company, and the certificate as an ordinary life policy, it would be clear that Taylor, the assured, had no authority, by will or otherwise, to change the beneficiary, or to in any way affect her rights without her consent.

For many, and, indeed, for most purposes, mutual benefit associations are insurance companies, and the certificates issued by them are policies of life insurance, governed by the rules of law applicable to such policies. There are, however, some essential differences usually existing between the contracts evidenced by such certificates and the ordinary contract of life insurance. *Presbyterian Mutual Assurance Fund* v. *Allen, supra; Elkhart Mutual Aid, etc., Ass'n* v. *Houghton,* 103 Ind. 286 (53 Am. R. 514); *Bauer* v. *Samson Lodge, Knights of Pythias, supra.*

The most usual difference is the power, on the part of the assured in mutual benefit associations, to change the beneficiary. But as in either case the rights of the beneficiary are dependent upon and fixed by the contract between the assured and the company or association, there seems to be no reason why the assured should have any greater power to change the beneficiary in one case than in the other, except as that power may be inherent in the nature of the association, or is reserved to him by the constitution, or by the laws of the association, or by the terms of the certificate.

In the case before us, the right and power of the assured, Taylor, to change the beneficiary was reserved to him by the by-laws of the order, and recognized in the certificate. Because of that reservation, the beneficiary, Anna Laura, did not have a right in and to the certificate, and the amount to be paid upon the death of the assured vested in such a sense that it could not be defeated. But it would be saying too much to say that she had no rights. She was the bene-

ficiary named in the certificate. The executors, so far as shown by the terms of the certificate, had no right at all either in or to the certificate or to the amount to be paid by the association. So far as shown by that certificate, they were mere trustees to collect the amount for the use and benefit of the real beneficiary, Anna Laura. So long as the contract remained as executed, she had the right of a beneficiary, subject to be defeated by a change of beneficiary by the assured.

So long as the certificate remained as executed, the assured had reserved to himself the power to change the beneficiary, and that was the extent of his right in, or power over, the certificate, or the amount agreed to be paid at his death. He had no interest in or to either the certificate or the amount agreed to be paid, that would have gone at his death to his personal representatives. By virtue of the by-laws and the certificate, which, as we have seen, constituted the contract between him and the Royal Arcanum, he had power to change the beneficiary. That same contract fixed the mode and manner in which that change might be made; and we think that, taking the by-laws and certificate together, the mode and manner of changing the beneficiary was fixed as definitely, and was as binding upon the assured, as was the right to make such change binding upon the association and the beneficiary. In other words, under the contract, the assured had a right to change the beneficiary, provided he made the change in the manner provided in the contract. The agreement was that he might change the beneficiary by surrendering the certificate and taking another payable to such beneficiary "dependent upon him" as he might direct.

In that contract Anna Laura, the beneficiary, had such an interest as that she had, and has, the right to insist that in order to cut her out, the change of beneficiary should be made in the manner provided in the contract.

The contract clearly contemplated that the change should be made and perfected by the assured during his lifetime.

It was not contemplated that he might make such a change by will, of which neither the association nor the beneficiary named in the certificate would have notice before his death, and which would not take effect until after his death.

In many of the cases reported in the books, it appears that such associations had provided in their by-laws and certificates that changes of beneficiaries might be made by the will of the assured.

In the absence of such provisions, the decided weight of authority is, that such changes can not be made by will, and that, to be effectual and binding upon the beneficiary named in the certificate, they must be made in the mode and manner provided in the by-laws and certificate; in other words, that they must be made in the manner and mode provided in the contract.

From the by-laws and certificate before us, it is clearly apparent, also, that the undertaking on the part of the association was not to pay a sum of money for the benefit of the estate of the assured, but for the benefit of members of his family, and those dependent upon him.

Under the second by-law set out above, the member was required to enter upon his application the name or names of the members of his family, or those dependent upon him, to whom he desired his benefits paid, subject to such future disposal of the benefits among his dependents as he might thereafter direct.

By the third by-law the association agreed that, upon a surrender of the certificate by the member, it would issue another to him, payable to such beneficiary or beneficiaries dependent upon him as he might direct. Thus, under the by-laws, the assured might substitute a new beneficiary, provided such beneficiary was a member of his family or dependent upon him, and provided the change of beneficiary was made in the manner prescribed in the by-laws.

Taylor, the assured, did not make a change of beneficiary in the manner prescribed in the by-laws, nor did he name

as new beneficiaries members of his family only, or those dependent upon him. He disregarded the provisions of the by-laws prescribing the manner of changing, and prescribing what class of persons might be named as beneficiaries, and attempted to make a change by his will. It is true, that he did not attempt to deprive the daughter of all rights as beneficiary, but, treating the certificate as though it belonged absolutely to him, undertook to dispose of the amount to be paid at his death by directing how it should be managed by the executors of his will, and directing that they should use the income from it as assets of his estate for the payment of his debts. And finally, without changing the beneficiary in the manner prescribed in the by-laws, he undertook to deal with the certificate and the amount to be paid upon it at his death as though the daughter had no right to either, except as might be bestowed by his will, and as though they both belonged to him to be disposed of by will as his property. And thus treating them, he undertook to dispose of the fund by giving it to others, neither members of his family nor dependent upon him, provided the daughter did not attain the age of twenty-one years. Without further elaboration upon this branch of the case, our conclusion is, that Anna Laura, having been named in the certificate as the beneficiary, and there having been no change of beneficiary in the manner prescribed in the by-laws of the association, she became the absolute owner of the insurance fund upon the death of her father, unaffected by the will. As fully sustaining our conclusion, we cite the following cases: *Masonic Mutual Benefit Society* v. *Burkhart*, 110 Ind. 189; *Supreme Lodge, Knights of Pythias, etc.*, v. *Schmidt*, 98 Ind. 374; *Stephenson* v. *Stephenson*, 64 Iowa, 534; *Hellenberg* v. *District No. 1, Independent Order of B'nai Brith*, 94 N. Y. 580; *Vollman's Appeal*, 92 Pa. St. 50; *Eastman* v. *Provident Mutual Relief Ass'n*, 20 Cent. L. J. 266; *Coleman* v. *Supreme Lodge, Knights of Honor*, 18 Mo. App. 189 (14 Ins. L. J. 635);

*Daniels* v. *Pratt*, 143 Mass. 216; *Supreme Lodge, Knights of Honor*, v. *Naim*, 22 Cent. L. J. 274; *Gould* v. *Emerson*, 99 Mass. 154; *Kentucky Masonic Mutual Life Ins. Co.* v. *Miller*, 13 Bush, 489; *Hogle* v. *Guardian Life Ins. Co.*, 1 Big. L. & A. Ins. Rep. 597; *Worley* v. *Northwestern Masonic Aid Ass'n*, 10 Fed. Rep. 227 (11 Ins. L. J. 141, 3 McCrary R. 53); *McClure* v. *Johnson*, 56 Iowa, 620; *Maryland Mutual Benevolent Society* v. *Clendinen*, 44 Md. 429 (22 Am. R. 52).

Appellee's counsel cite and rely upon the case of *Splawn* v. *Chew*, 60 Texas, 532. That case is not in harmony with what we hold here as to the want of power by the assured to change the beneficiary by a will; nor is it in harmony with the cases above cited. It was held in that case, that the by-law providing a mode for changing the beneficiary was directory only; that it was for the benefit of the association alone, and might be waived by it; that the association not objecting, the assured might change the beneficiaries by a will, and that the beneficiaries named in the certificate could not, after the death of the assured, be heard to say that there had been no change of beneficiaries in the manner provided in the by-laws.

As we have already said, in effect, in the case before us, our judgment is that the mode and manner of changing the beneficiary was as obligatory upon the contracting parties and all concerned as was the reservation of the power to the assured to make such change. The beneficiary, Anna Laura, did not have an indefeasible interest in the contract evidenced by the certificate, nor in the amount to be paid upon it upon the death of the assured, but she had an interest in them subject to be defeated by the change of beneficiary in the mode and manner provided by the by-laws which were a part of the contract. *Supreme Lodge, Knights of Pythias, etc.*, v. *Schmidt, supra*.

Taylor, the assured, neither changed, nor attempted to change, the beneficiary in the mode and manner provided in

the by-laws. He could not accomplish that end, nor affect the ultimate rights of the beneficiary by a will. Upon his death, therefore, Anna Laura became entitled to the amount to be paid upon the certificate, as her absolute property; appellees' executors, having collected from the Royal Arcanum, hold the amount so collected in trust for her, but they have no right to control, manage, and dispose of the fund as directed by the will, because, as to that fund, the will is of no effect.

The fund belonging absolutely to her, her guardian is entitled to it, to control and manage it as the court may direct until she shall have arrived at the years of majority. The court below, therefore, erred in overruling the demurrer to appellee's answer.

In answer to counsel, it is sufficient to say that the fact that Taylor made his will upon the same day that he requested the certificate to be so made as that the amount should be paid to his executors for the benefit of his daughter, can make no difference. The will constituted no part of the contract between him and the Royal Arcanum. That order agreed in the certificate to pay the amount to "Samuel Taylor and Martin V. McGilliard (executors) for the benefit of Anna Laura Taylor (daughter)," but it in no way consented that the beneficiary should be changed, nor that the fund should in any way be turned away from her by the will of the assured; indeed, there is nothing to show that the agents and officers of the order had knowledge that anything of the sort had been attempted by the assured.

The judgment is reversed, at the costs of appellees, and the cause remanded, with instructions to the court below to sustain appellant's demurrer to the answer, and to proceed in accordance with this opinion.

Filed May 24, 1887.