## MASON ET AL. v. MASON.

[No. 20,058. Filed December 12, 1902. Rehearing denied March 10, 1903.]

INSURANCE.—*Change of Beneficiaries.—Railroad Relief Association.*—The provision of §5050 Burns 1901 relative to the right to change beneficiaries has no application to an unincorporated railroad relief association. p. 195.

SAME.—*Change of Beneficiaries.—Railroad Relief Association.*—The plan of organization of a railroad relief association provided for the payment of fixed death benefits "to the relatives or other beneficiaries specified in the applications of such employes." It also provided that, in certain circumstances, members might apply for insurance in a class wherein higher benefits were paid, the member so applying to sign a supplementary application, and that the applicant might in his application, or subsequently, designate a beneficiary other than relatives. Decedent, a single man, took

160 191
161 529
160 191
163 390
160 191
f171 538

a certificate in favor of his mother. After his marriage he went with his wife to the authorized agent of the association, and surrendered his old certificate and requested that a new certificate be issued to him, in a different class, in favor of his wife. A new certificate was issued and delivered to the wife, but it did not specify the name of the beneficiary. *Held*, that there was no new designation of beneficiary in accordance with the provision of the contract. *pp. 192–202.*

From Superior Court of Allen County; *S. L. Morris*, Special Judge.

Action by Jennie Mason against the Pennsylvania Company and Rachael Mason on a benefit certificate. The company paid the amount of the certificate into court and was discharged, and thereafter judgment was rendered in favor of plaintiff, from which Rachael Mason appeals. Transferred from Appellate Court, under clause 2, §1337j Burns 1901. *Reversed.*

*Wilmer Leonard* and *Elmer Leonard*, for appellant.
*Henry Colerick*, for appellee.

GILLETT, J.—Appellee instituted this action to recover against appellant the Pennsylvania Company on an insurance certificate. Appellant Rachael Mason was also made a party defendant, the complaint alleging that she claimed, but, in fact, had no interest in said certificate. The latter unsuccessfully demurred to the complaint, and upon her demurrer being overruled she reserved an exception to the ruling, and then filed answer. The Pennsylvania Company paid the amount of said certificate into court, and, with the consent of parties, the court entered an order discharging it; and the cause proceeded, under the issues formed between the Masons, to a trial that resulted in a verdict and judgment for appellee. Appellant Rachael Mason appealed to the Appellate Court. Her first assignment of error challenged the ruling of the lower court in overruling her demurrer to the complaint.

The complaint discloses that under a written contract a number of railway companies, including the Pennsylvania

Company, have for a number of years maintained a relief department, as an unincorporated association; that while the undertaking is joint, to secure greater economy in management, yet the responsibility of each railway company to its employes is several. The contract provides for the creation of a fund, by the ratable contributions of each company and its employes of such sums as shall be necessary to meet the expenses of administration, and to pay such benefits as become due. The instrument also provides that the affairs of the association shall be managed by a joint advisory committee, elected in part, from time to time, by the respective employes of the constituent companies. It is further provided by the contract that the organization and regulations of the association shall be in accordance with an appended plan, and that such plan shall not be changed during the continuance of the agreement, except upon the approval and adoption of the same by all of the companies that are parties to such agreement.

The plan of organization and regulations above referred to provides for the payment of fixed death benefits "to the relatives or other beneficiaries specified in the applications of such employes," for the division of contributing employes into five classes, and that applications for membership are to be in accordance with a prescribed form. This form is to be signed by the proposed member, and it specifies the class to which he seeks admission, and in part reads: "Death benefits shall be payable to .............. (here designate the beneficiary or beneficiaries)." The form of organization also provides that, under certain circumstances, members may apply for insurance in a class wherein higher benefits are paid. A member so applying is required by the regulations to sign a supplementary application. This application, it is provided, shall be as follows: "I, * * * by virtue of my former principal application, under and subject to the conditions recited in said

principal application, and upon the terms thereof, unless, and only so far as herein modified, do hereby make this supplementary application for the following, namely: (here specify the character of benefits applied for)." Regulation No. 28 is as follows: "An applicant may in his application, or subsequently, designate a beneficiary to receive his death benefit, other than relatives entitled to recover the amount payable in the event of the death of the applicant, on giving good and sufficient reasons for the designation." Regulation No. 29 contains the following provision: "Benefits payable on account of the death of a member shall be payable only to the beneficiary or beneficiaries designated in his application to receive the same, if living at the death of said member."

The complaint alleges further that on the 8th day of June, 1898, George W. Mason, a single man, made application for insurance in said relief association, and on the same day received a certificate of membership therein, with a provision in said certificate that in the event of his death the death benefit should be payable to defendant Rachael Mason, his mother; that he subsequently intermarried with the plaintiff, and afterwards he went with his said wife to the authorized agent of said association, and then and there surrendered to him said certificate of membership and a book, containing copies of the contract and regulations above mentioned, that he had received from the association with his former certificate; that he then and there requested that a new certificate of membership be issued to him, in a different class, "and then and there designated his said wife, Jennie Mason, as the beneficiary in case of his death;" that said agent being then and there authorized so to do, issued to said George W. Mason a certificate of membership in said association, numbered 36,917, and a book of like character to the one above mentioned; that said George W. Mason then and there delivered said new certificate and book to his wife, and that at the time of the surrender of

said old certificate, and at the time of the delivery to him of said new certificate, it was his intention and purpose that said insurance should be for the use and benefit of plaintiff, "And that at the time of the issuing thereof he so named and designated her, to the officer of said company aforesaid, as such beneficiary." The complaint sets out a copy of said certificate No. 36,917. Said instrument does not state the name of the beneficiary, but recites that said George W. Mason is a member of the relief fund of the association, and is entitled to the benefits provided by the regulations of said association (which regulations are annexed to the certificate, and by reference made a part thereof) for a member of the third class, with no additional death benefit of the first class. The further allegations of the complaint are not material to the question in hand.

As the association had no capital stock, but as its members contributed cash to a common fund, out of which benefits were paid, and as the contributing employes, through their representatives, participated in the administration of the association, it was clearly of a mutual character. The provisions of §5050 Burns 1901 relative to the right to change beneficiaries, has no application to this association, as it was unincorporated. *Presbyterian, etc., Fund* v. *Allen,* 106 Ind. 593. The courts recognize a difference, as to the extent of the right of persons insured to make such changes, between the ordinary insurance contracts and the certificates of mutual companies. As to the latter contracts, the great weight of authority is that in the absence of limitations or restrictions in the rights of a member, imposed by the organic law, the articles, the by-laws, or the certificate, a member may change his beneficiary. *Presbyterian, etc., Fund* v. *Allen, supra; Masonic Mut., etc., Soc.* v. *Burkhart,* 110 Ind. 189; *Holland* v. *Taylor,* 111 Ind. 121; *Milner* v. *Bowman,* 119 Ind. 448, 5 L. R. A. 95, and cases there cited; Niblack, Mut. Ben. Soc. (2d ed.), §212. Without pausing to grasp the philosophy of the dis-

tinction between the two forms of contract, it suffices to affirm that the cases generally hold that under the latter form of contract the beneficiary has ordinarily no vested interest. But whatever the character of the association, it is obvious that the relations of the insured and the beneficiary to the insurance contract may be made to depend upon the provisions of the contract. To the extent that the contract gives the beneficiary rights, its provisions are a law unto the parties. If there is a right reserved by the insured to change the beneficiary, but if the contract points out the manner in which the change is to be made, then it is the duty of the insured to pursue the contract, if he would displace the beneficiary. *Holland* v. *Taylor, supra; Olmstead* v. *Masonic Mut. Ben. Soc.,* 37 Kan. 93, 14 Pac. 449; *Renk* v. *Herrman Lodge,* 2 Dem. Surr. (N. Y.) 409; *Thomas* v. *Thomas,* 15 N. Y. Supp. 15; *Mellows* v. *Mellows,* 61 N. H. 137; *Rollins* v. *McHallon,* 16 Colo. 203, 27 Pac. 254, 25 Am. St. 260; *Supreme Lodge, etc.,* v. *Nairn,* 60 Mich. 44, 26 N. W. 826; *Highland* v. *Highland,* 109 Ill. 366; *Hotel-Men's, etc., Assn.* v. *Brown,* 33 Fed. 11.

In *Holland* v. *Taylor, supra,* the rules of the society provided that a change of beneficiary might be made by the insured by the surrender of the old certificate and the execution of a direction for a change, according to a prescribed form, and it was held that the insured could not make such change by will. In speaking of the relation of the beneficiary to the contract, this court said: "It would be saying too much to say that she had no rights. She was the beneficiary named in the certificate. * * * So long as the contract remained as executed, she had the right of a beneficiary, subject to be defeated by a change of beneficiary by the assured. So long as the certificate remained as executed, the assured had reserved to himself the power to change the beneficiary, and that was the extent of his right in, or power over, the certificate, or the amount agreed to be paid at his death. He had no interest in or to

either the certificate or the amount agreed to be paid, that would have gone at his death to his personal representatives. By virtue of the by-laws and the certificate, which, as we have seen, constituted the contract between him and the Royal Arcanum, he had power to change the beneficiary. That same contract fixed the mode and manner in which that change might be made; and we think that, taking the by-laws and certificate together, the mode and manner of changing the beneficiary was fixed as definitely, and was as binding upon the assured, as was the right to make such change binding upon the association and the beneficiary. In other words, under the contract, the assured had a right to change the beneficiary, provided he made the change in the manner provided in the contract."

The fundamental law of the society, the articles and the by-laws, are a part of the contract to the same extent as though they were written in the certificate, and persons accepting certificates from mutual insurance associations. must take notice of all provisions that constitute parts of the contract. *Holland* v. *Taylor, supra; Presbyterian, etc., Fund* v. *Allen, supra.* In the latter case it was said: "The weight of authority, as will appear from an examination of the cases cited, is in favor of the general doctrine that beneficiaries may be changed in cases where policies like the one before us are issued by such associations as the present, and that in this respect such policies are not governed by the general rule which governs ordinary insurance contracts. But granting that this is the general rule, still it can not prevail if the charter of the association prohibits a change in the beneficiary first agreed upon and designated. It is firmly settled that a contract must be made in the mode prescribed by the corporate charter, and must be one authorized by it. *Ohio Ins. Co.* v. *Nunnemacher,* 15 Ind. 294; *Leonard* v. *American Ins. Co.,* 97 Ind 299; *Ashbury, etc., Co.* v. *Riche,* L. R. 7 H. L. 653; *Head* v. *Providence Ins. Co.,* 2 Cranch 127. Of the provisions

of the charter and by-laws of the corporation, all who become members are chargeable with knowledge. *Bauer* v. *Sampson Lodge,* 102 Ind. 262."

The general subject under consideration has been well discussed in the text-book above cited. It is there said: "When a mutual benefit society has, under the powers and within the limits of its charter, provided in its by-laws a particular method of changing a beneficiary, or has set forth in its certificate a way by which the change may be made, no change of beneficiary may be made in any other mode or manner. The reason for this rule is not difficult to discover. It is based upon the familiar maxim that the expression of one thing excludes other and different things. When a society frames a set of rules providing for the distribution of a fund, and for the rights of beneficiaries and members, it must be assumed that it excludes every other mode and manner. Any other conclusion would lead to the most interminable confusion in the law applicable to the distribution of the insurance money, and fritter away, in the expenses of uncertain litigation, funds created for the benefit of widows, orphans and heirs. But there is still another reason. It can not be said that a beneficiary named in a certificate has no rights therein because he has no vested rights. The beneficiary has a right to the proceeds of the certificate of insurance, subject to the right of the member to change the beneficiary according to the terms of the by-laws and regulations of the society, which are a part of the contract of insurance; and the right of the beneficiary to have this contract carried out in the manner provided for is as binding upon the member as his right to change the beneficiary is binding upon the beneficiary and the society." Niblack, Mut. Ben. Soc. (2d. ed.), §218.

While it is familiar doctrine that a court of equity will, within limits, aid the defective execution of powers, and while we have in this State a precedent, in the case of *Isgrigg* v. *Schooley,* 125 Ind. 94, where there was the

element of fraud on the part of the beneficiary, in which this court held that the defective exercise of a power to change a beneficiary would be aided, yet we think that in this class of contracts the jurisdiction should be but sparingly exercised. Insurance of this character is obtained at its approximate cost. Its beneficiaries are usually in necessitous circumstances, and it is of the utmost importance that death benefits should be paid over to beneficiaries under such contracts without delay or great expense. This can not be done by the association with safety if the regulations that it has established, that look to the certain designation of beneficiaries, are to be disregarded. Regulations of this character are not only important to the designated beneficiary and the association, but in their general operation they tend to execute the purpose of the insured. They are therefore to be regarded as matters of substance, and as contractual undertakings that will rarely, if at all, permit of a substitutional method of proof. *Hotel-Men's, etc., Assn.* v. *Brown,* 33 Fed. 11; *Mellows* v. *Mellows,* 61 N. H. 137.

In the case last cited the facts were that the rules provided that the fund should go to certain persons, unless otherwise ordered in writing by the insured; such order to be signed by two witnesses and acknowledged before a justice of the peace. The insured left a will, by which he attempted to dispose of the fund. The will was signed by two witnesses, but not acknowledged. In disposing of the case the supreme court of New Hampshire said: "The contract does not expressly allow the power of appointment to be exercised by an order executed in a manner deemed by a court or jury equivalent in utility to the prescribed form. The object of the association is the payment of a certain amount of life insurance after the death of each member; and it may reasonably be inferred that, for a substitutional appointment, a written and acknowledged order, signed by two witnesses, is required, not merely as

evidence satisfactory to the payer, but as such a protection of each member, and the payees named in the contract, as the law provides for an owner of property and for his heirs, in the execution of a will or codicil. It might be claimed that anything shown by competent evidence to have been regarded by the parties, when they made the contract, as mere matter of form, the law would not treat as matter of substance. But an acknowledgment of a substitutional order before a justice of the peace might in fact be a material safeguard for the member making it, and for the beneficiaries named in the rules and displaced by the order; and the contract does not authorize any tribunal to dispense with any proceeding exacted by the contract as a substantial security of the rights of those parties. If acknowledgment could be omitted as a useless form, there is no ground of law on which two witnesses, or a signed writing, could be required. The will is not such an order as the contract demands."

We agree with counsel for appellee that regulation No. 28 of the association is broad enough to have permitted the insured, with the consent of the association, to have designated appellee as a substituted beneficiary. But this regulation must be construed in connection with the entire contract, and the question arises whether he did designate her in the manner provided by the contract. In this connection it is to be first noted that the original contract provides that the appended plan of organization shall not be changed except upon the approval and adoption of all of the companies that are parties to such agreement. The latter instrument recites, in the statement of the purposes of the organization, that one of such purposes is to pay death benefits "to the relatives or other persons specified in the applications of such employes." The applicant is required in his original written application to designate his beneficiary in case of death. If he enters a higher class, as the

deceased did, he is required to sign a supplementary application, which shows that he applies by virtue of his former application, and upon the terms thereof, unless, and only so far as, modified in his supplementary application. Regulation No. 29 we have quoted above, and it is unnecessary to repeat it, but its language is most emphatic. That regulation, it will be observed, is couched in the form of a limitation that excludes all but designated beneficiaries. The new certificate that was issued to the insured recites that the latter is entitled to benefits as provided by the regulations annexed to such certificate. The surrender of the first certificate by the insured, and the obtaining of the second certificate, did not amount to a novation. Under the provisions of the regulations, the terms of the second application, and the language of the second certificate, the two transactions were absolutely interlocked. The complaint clearly fails to show a new designation in accordance with the contract. In what manner the husband "designated his said wife, Jennie Mason, as his beneficiary in case of his death," the complaint does not allege, but it is evident that, if he did so, his act was a clear contradiction of the second application that he signed.

When the fact is considered that the benefit was one in which the designated beneficiary had an interest that could not be set aside except by lapsing or a new contract, or a designation in at least substantial compliance with the regulations of the association, it will be at once perceived that the contract is not to be impaired by mere declarations upon the part of the insured as to his desires, or by contemporaneous acts indicative of his intent. For the same reason it follows that the act of the Pennsylvania Company in paying the money into court did not put the appellee in any more advantageous position. While such payment was a waiver of the right of the Pennsylvania Company, it was not a waiver of the right of the designated beneficiary; and,

besides, it is to be recollected that at the time of such payment whatever right such beneficiary had in the policy had become a vested or property right by the death of the insured.

Judgment reversed, with a direction to the trial court to sustain the demurrer of appellant Rachael Mason to the complaint.