### ASHER v. CRAIG ET AL.

[No. 14,623. Filed May 19, 1934. Rehearing denied October 1, 1934. Transfer denied January 8, 1935.]

James W. Noel, Hubert Hickam, Alan W. Boyd, Robert D. Armstrong, James W. Lamkin, and R. Niven Stall, for appellant.

Burke G. Slaymaker, Slaymaker, Merrell & Locke, and Ephriam O'Hara, for appellee.

WOOD, C. J.—May 31, 1927, appellee Royal Neighbors of America, hereinafter referred to as the society issued its second substitute benefit certificate to Edith Nellie Asher, hereinafter referred to as the insured, in the sum of $3,000, payable to appellant Delaney Asher, her husband, as beneficiary. The insured died on January 6, 1930. Immediately thereafter a controversy arose between the appellant and the appellee, Rosa Craig, as to who was the beneficiary under said benefit certificate, each one of them claiming to be the beneficiary and entitled to the proceeds of the certificate.

The society, for the purpose of relieving itself from liability under the certificate and determining the respective rights of Asher and Craig as beneficiaries, filed its amended complaint in one paragraph in the lower court, in which it admitted the issuing of the benefit certificate, the death of the insured, liability under the certificate, and its willingness to pay the proceeds thereof to the party lawfully entitled thereto, also alleging the conflicting claims of Asher and Craig as beneficiaries, and asking that they be required to interplead between themselves concerning their respective claims; that the society be permitted to pay the money into court, thus relieving itself from further liability under the certificate. In its amended complaint, as a part of the allegations of fact, the society set out a copy

of sections 212 and 217 of its by-laws, reading as follows:

"Sec. 212. BENEFICIARY—*Change of.*—Any member in good standing, who desires to make a change of his or her beneficiary or beneficiaries shall fill out the surrender clause on the back of his or her old benefit certificate, designating therein the change desired, and sign the same in the presence of two witnesses, one of whom may be any local Camp Recorder or a Notary Public or any other person authorized by law to administer oaths. The execution of such surrender clause shall also be attested by such recorder or may be acknowledged before the notary or any such other person. The said benefit certificate with said request endorsed thereon should be delivered to the local Recorder of the Camp where membership is held, or forwarded direct to the Supreme Recorder together with a fee of fifty cents. When the certificate and fee are delivered to the local Recorder, she shall immediately forward the same together with the fee to the Supreme Recorder. The Supreme Recorder, whether she received the benefit certificate and fee from the Recorder or direct from the member shall thereupon issue a substitute benefit certificate payable to the beneficiary or beneficiaries named in said surrender clause, subject to the provisions of Section 210 hereof. No change in the designation of beneficiaries shall be effected until a substitute certificate has been written by the Supreme Recorder and within the lifetime of the member and until such time the old certificate shall be in force. Any attempt by a member to change the payee of the benefits under his or her benefit certificate by will or other testamentary document, or by contract, agreement, assignment, or otherwise than by strict compliance with the provisions of this section, shall be absolutely null and void. Any agreement entered into by a member not to change his or her beneficiary shall be null and void."

"Sec. 217. CERTIFICATE LOST—*Substitute Therefor.*—In case a benefit certificate is lost, destroyed or beyond the member's control, such member on forms furnished by the Supreme Recorder, may waive all claims thereunder, designate the same or

some other beneficiary or beneficiaries, the same or smaller amount of benefits and in said waiver request that a substitute benefit certificate be issued. Such waiver shall be signed by the member in the presence of two witnesses, one of whom may be any local Camp Recorder or a Notary Public. The execution of such waiver shall be attested by such Recorder or may be acknowledged before the Notary or any other person authorized by law to administer oaths. The said waiver shall be delivered to the local Recorder of the Camp where membership is held or forwarded direct to the Supreme Recorder together with a fee of 50 cents. When the waiver and fee are delivered to the local Camp Recorder she shall immediately forward same together with the fee to the Supreme Recorder. Upon receipt of such waiver and fee, the Supreme Recorder shall issue a substitute benefit certificate in the amount and payable to the beneficiary or beneficiaries, subject to the provisions of Section 210 of these By-laws, requested in said waiver. No change in the designation of beneficiary or beneficiaries in a substituted certificate shall be effected until such substitute certificate shall have been written by the Supreme Recorder during the lifetime of the member, and until such time the provisions of the old certificate in relation to the designation of beneficiary or beneficiaries shall remain in force."

To this amended complaint the appellee Craig filed an answer in one paragraph in which she admitted and adopted the allegations contained in the complaint of the society, except that she denied that Asher had any right or interest in the proceeds of said certificate. She alleged further that she was a sister of the insured, that the insured, because of sickness, was confined to her bed from December 22, 1929, to January 6, 1930, when she died; that on September 10, 1929, because of marital difficulties the insured and Asher separated, and did not live or cohabit together as husband and wife after that date; that from September 10, 1929, until the date of her death, the insured lived in the home

of the appellee Craig; that at the time of their separation Asher had possession and control of the benefit certificate; that the insured at that time and on divers other times, demanded of Asher, that he surrender the possession and control of said benefit certificate to her, so that she might change the beneficiary therein, and make the appellee Craig her beneficiary; that Asher wrongfully and unjustly refused to deliver said certificate to the insured, but continued to hold possession and control thereof, to and including the date of the death of the insured; that the insured, because of her illness in December, was unable to give full and complete attention to her private affairs; that she informed the recorder of the local Camp of the society of which she was a member, of her desire to change the name of the beneficiary in the benefit certificate; that the recorder informed the insured that the society would not consent to a change of beneficiary, unless the benefit certificate held by Asher was obtained by her and placed in the possession of the camp recorder; that said recorder knew at that time the insured was unable to obtain posssesion of the benefit certificate; that the insured, because of her serious illness, was not able to recall the provisions of the beneficiary certificate respecting change of beneficiaries; that she believed that a change of beneficiary could not be made without procuring the certificate from Asher; that because of the statements and declarations made to her, by the camp recorder, the insured was misled and deceived, and did not know that she had any right to change the beneficiary in any manner, except by procuring possession of the certificate from Asher; that she did everything in her power to change the beneficiary certificate and make it payable to Craig.

To the amended complaint of the society, the appellant Asher filed an answer and cross-complaint in which

he admitted all facts pleaded by the society in its complaint, except, that he denied that the appellee Craig had any right or interest in the proceeds of said benefit certificate; that he was separated from his wife, the insured, at the time of her death; that a divorce proceeding was pending between them at that time; that he had always supported insured as his wife and continued to support her after their separation, by paying her $10 each week until her death; that appellee Craig immediately notified him of the insured's death; that he had been in possession of the benefit certificate issued upon the insured's life for a period of more than two years prior to her death, was named as the legal beneficiary therein, and had paid all premiums and assessments on the certificate up to and until the death of the insured; that appellee Craig never paid any premium or assessment on said certificate; that just prior to the death of insured a premium became due; that the appellee Craig was notified of this fact; that she did not pay said premium, that appellant paid the premium and kept said certificate in force; that after the funeral of the insured, as beneficiary under said certificate, he made all necessary proofs of death required by the by-laws of said society; that after the burial of insured, and this appellant had obligated himself to pay all the expenses of said burial, appellee Craig notified appellant that she challenged his rights to the proceeds from said benefit certificate; that Craig had never before indicated in any manner, her intention to claim the money due on said benefit certificate; that the insured had previously changed the beneficiary in the certificate issued to her by the society, and well knew the procedure to follow to accomplish that purpose; that no effort was made by the insured to change the beneficiary in the benefit certificate, though a period of four months had elapsed from the date of their

separation; that the insured never made any demand upon him for possession of the certificate; that neither the insured nor Craig had ever paid any permium or assessments upon the certificate as they became due.

To this cross-complaint the appellee Craig filed an answer in which she admitted, as alleged in said cross-complaint, that Asher and insured were husband and wife, and that he had an insurable interest in her life; that Asher and insured were separated at the time of her death and a divorce proceeding was pending between them; that at the time of her death insured was living with appellee Craig, and that she, Craig, immediately notified Asher of insured's death; that Asher was in possession of the benefit certificate and had been for some time previous to the insured's death; that the certificate was kept in good standing and had not been permitted to lapse before the death of the insured; that Asher filed proofs of death of insured; that Craig notified the society and Asher that she claimed all the benefits payable under the certificate; that the by-laws set out in the amended complaint of the society, admitted by Asher as true, were likewise admitted by her to be true. All other allegations contained in appellant Asher's cross-complaint, not thus specifically admitted were denied.

The appellee Craig also filed a cross-complaint in which she alleges the issuing of the benefit certificate to the insured by the society, payable to Asher as bene-ficiary, also sections 212 and 217 of the by-laws of the society. The balance of the allegations were very similar to those contained in appellee Craig's answer to the amended complaint of the society. The substance of those allegations are set out above. We do not think it necessary to repeat them.

Appellant filed an answer in general denial to this cross-complaint.

On the issues as thus formed the cause was tried by the court without the intervention of a jury. The court made a general finding on which it rendered judgment in favor of the society, relieving it from further liability on the benefit certificate inasmuch at it had paid the proceeds thereof into court for the use and benefit of the party entitled thereto, awarding the proceeds of the certificate to appellee Craig as beneficiary, and denying to appellant any right or title to the same. Appellant filed a motion for a new trial, alleging as causes therefor that the finding of the court was not sustained by sufficient evidence, that the finding of the court was contrary to law, and certain rulings of the court in the admission and exclusion of evidence. This motion was overruled. Appellant appeals, assigning as the only error relied upon for reversal the overruling of his motion for a new trial.

It is not claimed by the appellee Craig that she was named and designated as beneciary in the benefit certificate in question, instead of Asher, in any manner provided by sections 212 and 217 of the by-laws of the society, but she bases her right to recover and seeks to uphold the judgment of the lower court upon the theory: (1) that there was wrongful conduct on the part of the named beneficiary Delaney Asher, by which he sought to advance his own interests in a court of conscience and equity; (2) that there was persistent, obstinate, deceptive conduct on the part of the local recorder of the society, designed to defeat the will of the insured; (3) that the insured was seriously ill and did not have the opportunity to act as a person in health might have acted; (4) that the society was not insisting upon its by-laws, but instead waived its by-laws, and brought the money into court to be disposed of as equity should direct.

Certain well established rules, determining the respec-

tive rights of the society, the insured and the designated beneficiaries, in benefit certificates issued by that class of organizations known and referred to as mutual benefit societies, have been announced, recognized and adhered to by authors and courts in writing upon or discussing the subject. Among those which are pertinent here are the following. A person who becomes a member of a mutual benefit society is bound to take notice of the by-laws thereof, they become a part of the contract with just as much force and effect as though written therein. When the certificate provides for a method by means of which the insured can change the name of the beneficiary, such beneficiary does not have an indefeasible right in the contract or the proceeds to be derived therefrom, but such beneficiary has an interest which can only be defeated in the manner provided in the by-laws. The member of such a society desiring to change the name of a beneficiary in a certificate must follow the method outlined in the by-laws of the society. *Holland* v. *Taylor* (1887), 111 Ind. 121, 12 N. E. 116; *Isgrigg* v. *Schooley* (1890), 125 Ind. 94, 25 N. E. 151; *Mason* v. *Mason* (1902), 160 Ind. 191, 65 N. E. 585; *Farra* v. *Braman* (1908), 171 Ind. 529, 86 N. E. 843; Niblack, Accident Ins. & Benefit Societies, §§217 and 218.

To these general rules, the court, in the case of *Supreme Conclave, etc.* v. *Cappella* (1890), 41 Fed. 1, announced exceptions relieving the member of a benefit society from literal compliance with its by-laws in perfecting a change of beneficiaries as follows: "(1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. (2) If it be beyond the

power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued." These exceptions have been recognized and given effect by the courts of our state.

It is the contention of appellee Craig, that the facts in this case bring it within these exceptions. The duty has therefore devolved upon this court, to examine the record, for the purpose of determining whether it supports this contention.

The first exception is not applicable to the facts, for no request had been made to the society for a change of beneficiary and a new certificate issued by it to the insured previous to her death. These facts are not in controversy.

The record also discloses, that the following facts are undisputed. The whole transaction relating in any way to the alleged change of beneficiary rests entirely in parol; there was no concealment, misrepresentation, or fraud practiced upon the insured or appellee Craig by the appellant. There was no collusion or conspiracy formed or existing between the appellant and the society or any of its duly authorized agents, at any time for any purpose; the appellant and insured separated on September 10, 1929; from that date until her death January 6, 1930, she lived in the home of appellee Craig; insured brought an action for divorce from appellant which was still pending and undisposed of at the date of her death; pursuant to an order of court appellant paid the insured the sum of from $7 to $10 per week pending the final disposition of the divorce case; insured

was confined in bed because of illness, continuously from December 22, 1929, until the date of her death; there was no conversation had between the insured and any officer connected with the society authorized to act concerning the change of beneficiary in her benefit certificate from September 19, 1929, until after December 22, 1929; at the request of the insured, the recorder of the local camp of the society, called at the home of the appellee Craig, for the purpose of making a change in the beneficiary, at which time, the recorder said to insured, that under the by-law of the society, it would be necessary to have the outstanding benefit certificate surrendered to the society in order to change the beneficiary; that it would be necessary to get the certificate from appellant; upon a former occasion the insured had changed the beneficiary and the society had issued a new certificate to her, without her having possession of or surrendering the old certificate; the insured had knowledge of this fact when she communicated with the recorder of the local camp regarding the change of beneficiary; on September 8, 1929, the insured knew, that she could change the beneficiary in the certificate, whether the appellant wanted her to or not; the recorder of the local camp did not have any blank waivers which were used for perfecting a change of beneficiary under Sec. 217 of the by-laws. On or about December 30, 1929, the recorder of the local camp wrote to the Supreme recorder for such waivers, but they were not received until after the insured's death. Insured requested her attorney to take such steps as were necessary to change the beneficiary, three weeks before her death, but he did nothing, except to talk with an attorney representing the appellant; after the insured's death, the appellant and appellee Craig met at an undertaker's parlor for the purpose of making arrangements for the funeral; on this occasion a controversy arose between them

about the amount to be expended for that purpose, the appellee Craig stated, that the appellant was going to receive insurance and could afford to purchase the equipment selected by her (Craig) ; appellant acceded to her request and obligated himself to pay for the equipment so selected by Craig; she never made any claim to the proceeds of the benefit certificate until after the appellant had obligated himself to pay for the funeral of insured; the fee of fifty cents charged for a change of beneficiary was never paid or tendered to the society; there was a disagreement between members of the society and the insured regarding the interpretation of the by-laws and the necessity of having possession of and surrendering the old certificate when making a change of beneficiary. Whether or not a demand was made upon appellant for the certificate and refused by him, to surrender possession thereof, was a disputed fact; two witnesses for the appellee Craig testified, that the insured made a demand upon appellant for the certificate on September 8, 1929, and that he refused to comply therewith. Witnesses testified that sometime after December 22, 1929, the insured expressed a desire in their presence to have the beneficiary named in her benefit certificate changed from the appellant to her sister, Rosa Craig. The society did not consent to the change in the manner attempted by the insured previous to her death.

In determining whether or not these facts bring this case within the purview of the second and third exceptions of the general rules controlling a change in beneficiaries, we must keep in mind the rule, that, where, after the death of the insured, adverse claims are made to a fund due under a benefit certificate, the payment of the fund into court by the society does not inure to the advantage of either claimant. The right of the parties to the fund in controversy

is determined by their situation at the time of the insured's death, when their rights became vested, so no subsequent action of the society can change or effect them. *Heinzman* v. *Whitman* (1923), 81 Ind. App. 29, 139 N. E. 329; *Modern Woodman, etc.* v. *Headle* (1914), 88 Vt. 37, 90 Atl. 893, L. R. A. 1915A, 580; *Ancient Order etc.,* v. *Bury* (1911), 165 Mich. 1, 130 N. W. 191, 34 L. R. A. 277; *Fink* v. *Fink* (1902), 171 N. Y. 616, 64 N. E. 506; Niblack, Accident Ins. & Benefit Societies, §222, p. 429; *Mason* v. *Mason, supra,* neither can we overlook the further rule, that: "It cannot truly be said that the interests of a beneficiary may be brought to an end at any time at the will of a member. It requires more than the will and intention of the member to accomplish the change . . . It requires some affirmative act on the part of the member to change the designation; his will and intention will not work the change." Niblack, Accident Ins. & Benefit Societies, §218, p. 416; *Mason* v. *Mason, supra.*

In the case of *Isgrigg* v. *Schooley, supra,* which was a case involving a change of beneficiary, our Supreme Court recognized and gave effect to the exception, on the theory that equity will aid imperfect changes of beneficiaries, considers that done which ought to have been done, and never requires impossibilities. It is upon that case that the appellee Craig largely relies to support the judgment of the lower court. In that case the question was on the sufficiency of facts in a cross-complaint to state a cause of action. It was alleged that the beneficiary had taken possession of the certificate without the knowledge of the insured, and claimed to him it had been lost; that the insured had made a written application and demand for a change to the society in open session, giving reasons for wanting to make the change of beneficiary; that he was unable to surrender possession of the certificate because of the facts aforesaid;

that the beneficiary and the officers of the society had conspired to prevent a change of beneficiary and that insured had paid the required fee of fifty cents for the change of beneficiary to the society; that the officer whose duty it was to forward the application for change and fee to the proper officer had refused to do their duty. This cross-complaint was held to state a good cause of action. The facts in the Isgrigg case and the instant case are vastly different and easily distinguishable.

This same situation holds true in every case to which our attention has been called by counsel, or which has come under our observation as a result of our own efforts.

Recognizing the rules of law applied by the courts in determining the respective rights of adverse claimants in this class of cases, we do not think there was a change of beneficiary effected in the case at bar.

The insured was bound to know the terms of sections 212 and 217 of the by-laws of the society. The appellant did not practice any fraud or deceit upon her, he did not come into possession of the certificate wrongfully, there is evidence in the record from which it can be assumed that the insured knew before September 10, 1929, that appellant would not deliver the certificate to her, she knew that she could not comply with the terms of section 212 of the by-laws if she desired to change the beneficiary in her certificate. But she was bound to know the terms of section 217 of the by-laws of the society, which provided a method of changing beneficiaries in case the certificate was lost, destroyed, or beyond her control. The undisputed facts show that she knew the beneficiary could be changed without the consent of the present named beneficiary, that she knew that the beneficiary could be changed without surrendering possession of the certificate because she had ac-

complished a change in that manner once before. With knowledge of all these facts no effort of any kind was made to change the beneficiary until about three weeks before the death of the insured when her lawyer said she requested him to take such steps as would be necessary to perfect the desired change and he did nothing until about two or three days before insured's death. The officers of the local camp were not consulted regarding a change of beneficiary until after December 22, 1929, and after the insured was confined to her bed, while the evidence shows that there was a disagreement regarding the method of making the change under the by-laws, there is no evidence that the officers of the local camp misled or deceived the insured either actually or constructively for the purpose of preventing a change of beneficiary. The local recorder did not have a form of waiver as required by section 217, but sent for one. During all this time, however, there was no effort made to prepare a written waiver as provided by section 217 of the by-laws, and deliver it to the recorder of the local camp, or forward it direct to the Supreme recorder, with the fee of fifty cents charged for making the change. The facts do not show that the appellant prevented a change of beneficiary from being made under section 217 in any manner whatsoever.

The ignorance of the recorder of the local camp regarding the method of changing the beneficiary, or the failure or neglect of the local camp to furnish such blank forms as it was accustomed to use in perfecting a change of beneficiary, was not an excuse for failure to comply with the requirements of the by-laws, by filing a written request of some kind, stating the change which the insured desired. 45 C. J. §164, p. 211.

In the case of *Ancient Order* v. *Bury, supra,* the court held that the failure of the insured under a benefit cer-

tificate to pay the fee required by the by-laws for the purpose of effecting a change of beneficiary would prevent equity from giving effect to the attempted change, where the proper officer had not assented to the change before the death of the insured. And in that case a written order to make the change had been executed and delivered to the local secretary. See *Fink* v. *Fink, supra.*

No authority has been cited nor have we been able to find any, in which a change of beneficiary, resting wholly in parol, has been recognized or given effect. Whether a change of beneficiary can be made in this manner, is not necessary for us to decide in the case under consideration.

In the case of *Mason* v. *Mason, supra,* the Supreme Court, in commenting upon the Isgrigg case, said: "While it is a familiar doctrine that a court of equity will, within limits, aid the defective execution of powers, and while we have in this State a precedent, in the case of *Isgrigg* v. *Schooley,* 125 Ind. 94, where there was the element of fraud on the part of the beneficiary, in which this court held that the defective exercise of a power to change a beneficiary would be aided, *yet we think in this class of contracts the jurisdiction should be but sparingly exercised.*" (Our italics).

In the case of *Farra* v. *Braman, supra,* the equitable rights of adverse claimants to the proceeds of a benefit certificate were before our Supreme Court for consideration. In that case the court said: "In the case at bar there is no room for invoking the aid of equity, as there is no element of fraud therein, and there is no defective exercise by the assured of the power or right to change his original beneficiary. It is not shown that he endeavored to comply with the method prescribed in the contract for displacing the appellee and substituting appellant in her place as beneficiary. Neither does it appear that appellee did anything whatever to prevent him

from substituting appellant, by the mode provided, as the beneficiary to whom the death benefit should be paid."

Appellant, upon the suggestion of appellee Craig that he was going to receive insurance on account of the death of the insured, acceded to her request and obligated himself to pay for burial equipment for the insured, of the appellee Craig's selection. It was not until after appellant had thus obligated himself that the appellee Craig made any claim whatsoever upon the proceeds of the benefit certificate involved here.

We conclude that the insured did not do all within her power to effect a change of beneficiary previous to her death and that the facts and equities in this case do not bring it within the exceptions contended for by appellee Craig. The most that the facts do show is an unexecuted intention or wish, upon the part of the insured, to change the beneficiary. This is not sufficient. See authorities cited, *supra.* 45 C. J. p. 204; *Smith* v. *Locomotive, etc., Ass'n* (1912), 138 Ga. 717, 76 S. E. 44; *Vanasik* v. *Western, etc., Ass'n.* (1913), 122 Minn. 273, 142 N. W. 333, 49 L. R. A. (N. S.) 141.

The decision of the lower court is not sustained by sufficient evidence and is contrary to law.

This conclusion makes it unnecessary for us to discuss the causes for a new trial dependent upon the action of the trial court in excluding certain evidence.

The judgment is reversed with instructions to sustain appellant's motion for a new trial.