HOESS, ADMINISTRATRIX ETC. *v.* CONTINENTAL
ASSURANCE CO. ET AL.

[No. 19,088.  Filed February 3, 1960.  Rehearing denied
May 23, 1960.]

*James K. Northam,* of Indianapolis, *Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen, George V. Burbach* and *Crumpacker, Gemberling & Enslen,* all of Hammond, for appellant.

*Saul I. Ruman, Julius H. Sachs, Rudolph Tanasijevich, C. Jerome Smith* and *Sachs, Ruman & Tanasijevich,* all of Hammond, for appellee.

RYAN, J.—This was an action brought by appellant as administratrix of the estate of Harry Lee Barnett, deceased, to recover the proceeds of a group life insurance policy upon the life of the decedent. Appellant alleged in her complaint that the decedent and appellee, Bertha Mae Barnett, were divorced prior to the issuance of the insurance policy and that the appellee, Bertha Mae Barnett, was not designated as decedent's beneficiary when the policy was issued. Appellant further alleged that the appellee was named beneficiary by reason of the mistake of the decedent's employer in forwarding information appearing in its files with reference to a former group policy.

The appellee, Continental Assurance Company, filed its interpleader, and by order of court paid to the clerk thereof the sum of One Thousand ($1,000.00) Dollars, which was the amount due on the policy, and was relieved from further responsibility.

The following stipulation of facts was entered into between the appellant, Hoess, and appellee, Barnett:

"1. Prior to April 6, 1946, Harry Lee Barnett was employed by Chicago & Calumet District Transit Company, Inc., and was a member of the bus drivers' union known as Division 517 of the American Federation of Labor. Following negotiations, the Chicago & Calumet District Transit Company entered into a labor contract with Division 517 governing the rights and responsibilities, working conditions, etc. of the bus drivers. One of the benefits accruing to employees, under the labor contract, was a provision requiring the Chicago & Calumet District Transit Company to purchase a so-called group life insurance policy covering the employees covered by the union contract.

"2. On April 6, 1946, Chicago & Calumet District Transit Company, Inc., entered into a group insurance contract with Aetna Life Insurance Company, Policy No. 12357. The policy ran for a period of one year. The beneficiaries under the policy consisted of the bus drivers who were members of the union. Aetna Life Insurance Company contracted to 'issue to the Employer for delivery to each insured employee, a certificate containing a statement as to the insurance protection to which the employee is entitled and to whom it is payable, together with a statement of the following conversion orivilege.'

This contract further provided:

'An employee insured hereunder may designate a beneficiary, or change his designation of beneficiary, by written request filed at the Home Office of the Company. Such designation or change shall take effect as of the date of execution of such request, whether or not the employed be living at the time of such filing, but without prejudice to the Company on account of any payments made by it before receipt of such request at its Home Office. The right to designate or change of the beneficiary shall continue if and while insurance of the employee is in force under the "Extended Insurance" provision.'

"3.  Under the terms of the policy, Harry Lee Barnett designated his then wife, 'Bertha Mae Barnett, wife' as beneficiary. This group insurance contract was extended for an additional year term, or through and including April 5, 1949, at which time it expired. Simultaneous with the expiration of the Aetna Contract, supra, the Chicago & Calumet District Company entered into a similar contract with Continental Assurance Company. That policy provided for a death benefit of $1,000.00 for each employee. The Chicago & Calumet District Transit Company agreed to register the employees eligible for the insurance. The registration provision reads as follows:

'Employees shall become insured subject to the provisions of this Policy in accordance with the Plan of Insurance set forth in the Application for this Policy. The Employer shall furnish the Company with the names of all Employees initially insured and of all employees who from time to time become eligible for insurance in accordance with such Plan, and of all Employees whose insurance ceases through termination of employment or otherwise prior to discontinuance of this Policy, together with the respective dates and other necessary data to determine the premiums hereunder.'

"4.  With regard to registering employees, the Chicago & Calumet District Transit Company delivered the registration

"4.  With regard to registering employees, the Chicago & Calumet District Transit Company delivered the registration cards of the employees under the former 'Aetna' policy to Continental Assurance Company.

"5.  Harry Lee Barnett died on July 23, 1953. At the time of his death he was still an employee of Chicago & Calumet District Transit Company. A Continental Assurance Company certificate issued in May, 1949, issued to Chicago & Calumet District Transit Company for delivery to Barnett was found among his personal effects, designating as beneficiary 'Bertha Mae Barnett, wife.' The Continental Assurance policy No. g 1307. had been

renewed by rider at its expiration date on April 5, 1950, and again on April 5, 1951, and again on April 5, 1952 and again on April 5, 1953.

"6. Mary Ann Hoess was duly appointed Administratrix of the Estate of Harry Lee Barnett. She brought this action to recover the proceeds of the policy. Continental Assurance paid the proceeds into Court by agreement of the parties. It has been absolved of any further responsibilities in the case."

The cause was submitted to the court for trial without a jury. Further evidence was heard, and the court rendered judgment in favor of appellee, Bertha Mae Barnett.

Appellant assigns as error the overruling of her motion for a new trial, which motion contains the following four grounds:

"1. The decision is contrary to law.

"2. The finding of the Court is contrary to law.

"3. The finding of the Court is not sustained by sufficient evidence.

"4. The decision of the Court is not sustained sufficient evidence."

Specifications 3 and 4 present no question, since the decision of the court below was negative to appellant, who had the burden of proof. The appellant cannot now challenge the insufficiency of the evidence to sustain such decision. However, under appellant's specifications 1 and 2 appellant presents the question as to whether or not appellant was entitled to relief under the evidence which was denied. *City of Angola* v. *Hulbert et al.* (1959), 130 Ind. App. 97, 162 N. E. 2d 324, and cases cited therein.

The appellant urges that the decedent did not designate the appellee, Bertha Mae Barnett, as beneficiary under the policy issued by Continental, and that the

certificate naming the appellee as beneficiary, having been issued through mistake, should now be reformed by this court.

The stipulation of facts shows that under the terms of the original contract of insurance with Aetna the decedent had designated the appellee, who was his then wife, as the beneficiary. It is conceded by both parties that this designation of appellee as beneficiary was perfectly valid. We further find from the stipulation of facts that a certificate of insurance issued in May of 1949 by Continental, and designating as beneficiary "Bertha Mae Barnett, wife," was found among the personal effects of the decedent when he died on July 23, 1953.

It is apparent that when the life insurance contract was transferred by the employer from Aetna Insurance Company to the Continental Assurance Company, the employer forwarded to the new insurance company, the Continental Assurance Company, the beneficiary named by decedent under the former policy with Aetna. There was some conflict in the evidence as to whether or not notice to the employees of the change in insurance carriers was ever posted. Be that as it may, the decedent, when he received the certificate of insurance naming the appellee as the beneficiary therein, was put on notice as to who was the beneficiary, and acquiesced in such action taken by his employer, who for this purpose was acting as the agent of its employee, the decedent herein.

Mr. C. W. Copple, who was General Superintendent and Manager of Insurance of the Chicago and Calumet District Transit Company from 1946 to 1953, testified on direct examination:

"Q. Well, I spoke to you over the telephone that at the time of the change-over in 1949 they posted company bulletins that the employees

could come in and change designation of beneficiaries if they so desired?

"A. That's right.

"Q. And at that time you didn't change any beneficiaries without written authority from the employee simply on your own, did you?

"A. We did it from verbal, and Harry told me out of his own mouth whom to change it to.

"MR. RUMAN: I will object and move it be stricken.

"THE COURT: Whom did he tell you?

"THE WITNESS: Mary Ann Hoess; that he intended to marry her.

. . .

"THE COURT: What was the occasion?

"THE WITNESS: We were having a cup of coffee and he asked me if I ever changed it and I said I didn't believe I had, I would do it when I got down to the office.

"THE COURT: That was about how long prior to his death?

"THE WITNESS: Short enough that it was the first thing I thought of after he died."

The decedent was chargeable with the provisions in the policy of insurance issued to his employer.
■ *Morales* v. *Equitable Life Assur. Soc. of U. S.* (1945), 115 Ind. App. 565, 60 N. E. 2d 747.

Section 9 of this policy provided as follows:

"9. CHANGE OF BENEFICIARY

Any Employee insured hereunder may designate a new beneficiary at any time by filing with the Employer a written request for such change, but such change shall become effective only upon receipt of such request at the Home Office of the Company."

And where the policy or the contract of life insurance contains the right of the insured to change the bene-

ficiary, such right must be exercised in the manner provided in such policy or contract. *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289. If the decedent, knowing who was designated as beneficiary, desired a change, it was incumbent upon him to exercise his right to change the beneficiary as the master policy provided under Section 9 quoted above. A mere oral request in and of itself is not sufficient to comply with the terms of the policy governing a change of beneficiary.

This is not such a case where the insured has done all in his power which he can do to change the beneficiary, and then some intervening cause or his death before the change is effective has occurred preventing the effectuation of the change so that a court of equity will decree that to be done which ought to be done.

Nor does the fact that the appellee is designated as "wife" alter the situation. The term "wife" is merely *descriptio personae.*

". . . and the fact that the one who otherwise answers the description does not, or did not at the inception of the insurance, have the legal status of wife of the insured does not prevent her from taking as beneficiary if it is otherwise clear that she is the person intended, assuming that she is eligible to designation as beneficiary and that the misdescription of her as 'wife' does not amount to a breach of warranty or misrepresentation avoiding the insurance." 29 Am. Jur., Insurance, §1292, p. 965.

And while the rights of a divorced beneficiary may be terminated by facts in addition to the divorce, in the absence of a policy provision to the contrary or regulation thereof by statute, the rights of a beneficiary under a policy of life insurance are not affected merely by the fact that the beneficiary

named thereunder has been divorced from the assured subsequent to the issuance of the policy. 29 Am. Jur., Insurance, §1309, p. 977.

Judgment affirmed.

Ax, Cooper, JJ., concur. Myers, C. J., not participating.

NOTE.—Reported in 164 N. E. 2d 125.