**Margaret A. COOK, Administratrix C.T.A. of the Estate of Douglas Daniel Cook, Deceased; Margaret A. Cook; Daniel Joseph Cook, a minor, Defendants-Appellants,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Interpleader Plaintiff-Appellee,**

**Doris J. Combs, Defendant-Appellee.**

**No. 1–681A204.**

Court of Appeals of Indiana, First District.

Nov. 30, 1981.

Rehearing Denied Jan. 6, 1982.

## STATEMENT OF THE CASE

RATLIFF, Judge.

Margaret A. Cook, Administratrix C.T.A. of the Estate of Douglas D. Cook (Douglas); Margaret A. Cook; and Daniel J. Cook (Margaret and Daniel) appeal from an entry of summary judgment granted by the trial court in favor of Doris J. Cook Combs (Doris) in an interpleader action brought by The Equitable Life Assurance Society of the United States (Equitable). We affirm.

## FACTS

Douglas purchased a whole life insurance policy on March 13, 1953, from Equitable, naming his wife at that time, Doris, as the beneficiary. On March 5, 1965, Douglas and Doris were divorced. The divorce decree made no provision regarding the insurance policy, but did state the following: "It is further understood and agreed between the parties hereto that the provisions of this agreement shall be in full satisfaction of all claims by either of said parties against the other, including alimony, support and maintenance money." Record at 85–86.

After the divorce Douglas ceased paying the premiums on his life insurance policy, and Equitable notified him on July 2, 1965, that because the premium due on March 9, 1965, had not been paid, his whole life policy was automatically converted to a paid-up term policy with an expiration date of June 12, 1986. The policy contained the following provision with respect to beneficiaries:

"BENEFICIARY. The Owner may change the beneficiary from time to time prior to the death of the Insured, by written notice to the Society, but any such change shall be effective only if it is endorsed on this policy by the Society, and, if there is a written assignment of this policy in force and on file with the Society (other than an assignment to the Society as security for an advance), such a change may be made only with the written consent of the assignee. The interest of a beneficiary shall be subject to

Bruce R. Runnels, Cline, King & Beck, Columbus, Dongus, Cregor & Messick, Indianapolis, for defendants-appellants.

John T. Sharpnack, James F. Rosner, Sharpnack, Bigley, David & Rumple, Columbus, for interpleader plaintiff-appellee.

the rights of any assignee of record with the Society.

Upon endorsement of a change of beneficiary upon this policy by the Society, such change shall take effect as of the date the written notice thereof was signed, whether or not the Insured is living at the time of endorsement, but without further liability on the part of the Society with respect to any proceeds paid by the Society or applied under any option in this policy prior to such endorsement.

If the executors or administrators of the Insured be not expressly designated as beneficiary, any part of the proceeds of this policy with respect to which there is no designated beneficiary living at the death of the Insured and no assignee entitled thereto, will be payable in a single sum to the children of the Insured who survive the Insured, in equal shares, or should none survive, then to the Insured's executors or administrators."

Record at 2 and 59.

On December 24, 1965, Douglas married Margaret, and a son, Daniel, was born to them. On June 7, 1976, Douglas made a holographic will in which he bequeathed his insurance policy with Equitable Life to his wife and son, Margaret and Daniel:

"Last Will & Testimint [sic]

I Douglas D. Cook

Being of sound mind do Hereby leave all my Worldly posessions [sic] to my Wife and son, Margaret A. Cook & Daniel Joseph Cook. being my Bank Accounts at Irwin Union Bank & trust to their Welfair [sic] my Insurance policys [sic] with Common Welth of Ky. and Equitable Life. all my machinecal [sic] tools to be left to my son if He is Interested in Working with them If not to be sold and money used for their welfair [sic] all my Gun Collection Kept as long as they, my Wife & Son [sic] and then sold and money used for their welfair [sic]

I sighn [sic] this
June 7—1976
at Barth Conty
Hospital Room
1114 Bed 2

/s/ Douglas D. Cook
/s/ 6–7–76 Margaret A. Cook wife
/s/ Chas. W. Winkler
/s/ Mary A. Winkler"

This will was admitted to probate in Bartholomew Superior Court after Douglas's death on June 9, 1979. On August 24, 1979, Margaret filed a claim with Equitable for the proceeds of Douglas's policy, but Equitable deposited the proceeds, along with its complaint in interpleader, with the Bartholomew Circuit Court on March 14, 1980. Discovery was made; interrogatories and affidavits were filed; and all parties moved for summary judgment. The trial court found that there was no genuine issue as to any material fact respecting Doris's claim to the proceeds of the policy and entered judgment in her favor as to the amount of the proceeds plus interest, a total of $3,154.09. Margaret and Daniel appeal from this award.

## ISSUE

Is the trial court's entry of summary judgment in this case contrary to Indiana law because the court entered judgment in favor of the named beneficiary of an insurance policy rather than in compliance with the insured testator's intent as expressed in his will?

## DISCUSSION AND DECISION

Margaret and Daniel recognize that matters relating to summary judgment are controlled by Ind.Rules of Procedure, Trial Rule 56. Trial Rule 56(C) states, in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Margaret and Daniel do not dispute the facts in this case, yet they contend that the court's entry of summary judgment was erroneous because Indiana law does not require strict compliance with the terms of an insurance

policy relative to a change of beneficiary in all cases. They argue, therefore, that strict compliance with policy provisions is not required for the protection of either the insurer or the insured once the proceeds have been paid by the insurer into court in an action for interpleader and that the court should shape its relief in this case upon the equitable principle "that the insured's express and unambiguous intent should be given effect." Appellants' brief at 22. However, Margaret and Daniel cite no Indiana cases for this proposition stating that Indiana courts have never considered the precise factual combination giving rise to this appeal and citing instead cases from Minnesota and Arkansas. The latter jurisdiction they denominate as the leading proponent of the theory they espouse: "that the provisions of a Will, either alone or in conjunction with supporting circumstances, effectively change the beneficiary of a life insurance policy." *Id.* at 24.

Doris agrees that less than strict compliance with policy change requirements may be adequate to change a beneficiary where circumstances show the insured has done everything within his power to effect the change. Nevertheless, Doris asserts that Indiana adheres to the majority rule finding an attempt to change the beneficiary of a life insurance policy by will, without more, to be ineffectual. We agree with Doris.

Margaret and Daniel are correct in asserting that there are no Indiana cases involving precisely the same set of facts as occur in this case. Nevertheless, there is ample case law in this jurisdiction to support the trial court's determination. Almost one hundred years ago our supreme court in *Holland v. Taylor*, (1887) 111 Ind. 121, 12 N.E. 116, enunciated the general rule still followed in Indiana: an attempt to change the beneficiary of a life insurance contract[1] by will and in disregard of the methods prescribed under the contract will be unsuccessful. *See also*, 44 Am.Jur.2d, *Insurance* § 1785 (1969); 46 C.J.S. *Insurance* § 1176 (1946); 25 A.L.R.2d 999 (1952) and Later Case Service (1981); 2A J. A. Appleman, Insurance Law & Practice § 1078 (1966). In *Holland*, the assured and testator, Charles D. Taylor, had been issued a benefit certificate by Royal Arcanum, a mutual benefit society, in which certificate Taylor's daughter, Anna Laura, was the named beneficiary. The certificate provided that Taylor could change the named beneficiary by following certain procedures. On the same day that Taylor applied for the certificate he made his will in which he acknowledged the certificate for his daughter's benefit, but also provided that the certificate benefits, under certain circumstances, were to inure to the benefit of his wife or estate rather than as provided in the certificate for the exclusive benefit of his daughter. After Taylor's death, Holland was appointed guardian of Anna Laura and brought an action requesting that the executors of Taylor's estate pay over to him the fund which they had collected from the Royal Arcanum. The trial court overruled a demurrer to the answer and held that the executors were entitled to dispose of the fund according to the will. On appeal, our supreme court reversed with in-

---

1. We find appellants' attempt to distinguish mutual benefit society certificates from regular insurance policies as to the issue of changing beneficiaries to be unconvincing. The court in *Holland v. Taylor*, (1887) 111 Ind. 121, 126, 12 N.E. 116, pointed out that "[f]or many, and, indeed, for most purposes, mutual benefit associations are insurance companies, and the certificates issued by them are policies of life insurance, governed by the rules of law applicable to such policies." Furthermore, at the time *Holland* was written, it was the law that an insured under an ordinary life insurance policy had no authority to change the beneficiary or in any way affect her rights without her consent.

That was not the case of an insured under a certificate of a mutual benefit association where the certificate or by-laws provided that the insured could change beneficiaries so long as the new beneficiary was a member of a certain, usually dependent, class. Thus, while recognizing that there were some essential differences respecting the right to change beneficiaries between the associations and insurance companies, the court stated that, "in either case the rights of the beneficiary are dependent upon and fixed by the contract between the assured and the company or association . . . . " *Id.*

structions to the trial court to sustain appellant's demurrer to the answer. In doing so the court stated at 111 Ind. 130–31, 12 N.E. 116:

> "Taylor, the assured, neither changed, nor attempted to change, the beneficiary in the mode and manner provided in the by-laws. He could not accomplish that end, nor affect the ultimate rights of the beneficiary by a will. Upon his death, therefore, Anna Laura became entitled to the amount to be paid upon the certificate, as her absolute property; appellees' executors, having collected from the Royal Arcanum, hold the amount so collected in trust for her, but they have no right to control, manage, and dispose of the fund as directed by the will, because, as to that fund, the will is of no effect."

Indiana courts have recognized exceptions to the general rule that strict compliance with policy requirements is necessary to effect a change of beneficiary. Three exceptions were noted by this court in *Modern Brotherhood v. Matkovitch*, (1914) 56 Ind.App. 8, 14, 104 N.E. 795, and reiterated in *Heinzman v. Whiteman*, (1923) 81 Ind. App. 29, 36, 139 N.E. 329, *trans. denied*:

> " '1. If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change the beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. 2. If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. 3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary; but before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued.' "

In *Modern Brotherhood* the insured had attempted to change the beneficiary of a mutual benefit insurance certificate in ac-

cordance with the terms of the certificate, but was thwarted in her attempts to do so by wrongful acts of the original beneficiary. It was impossible, therefore, for the insured to comply literally with the bylaws and regulations of the society for changing beneficiaries even though she notified the society of her desires to change the beneficiary on her certificate and also indicated those desires in her will. The court on appeal held that the trial court had erred in sustaining a demurrer to paragraph three of the complaint which stated facts sufficient to constitute an action upon equitable principles, but had properly sustained a demurrer to paragraph four of the complaint which merely stated that the insured had changed the beneficiaries of her certificate by will. The court repeated the rule of *Holland* at 56 Ind.App. 16, 104 N.E. 795: "Our courts have indicated that the rule in this State is, that without some other fact or facts, in aid of the change the insured cannot change the beneficiary by the execution of a will."

The public policy considerations undergirding this rule and its limited exceptions involve protection of the rights of all the parties concerned and should not be viewed, as appellants advocate, for the exclusive protection of the insurer. Indiana, in fact, has specifically rejected this position. In *Stover v. Stover*, (1965) 137 Ind.App. 578, 204 N.E.2d 374, 380, *on rehearing* 205 N.E.2d 178, *trans. denied*, the court recognized an insured's right to rely on the provisions of the policy in regard to change of beneficiary:

> "We must reject appellant's contention that the provisions set forth in the certificate, as mentioned above, are for the exclusive benefit of the insurance company and may be waived at will. The deceased insured himself is entitled to rely upon such provisions that he may at all times know to whom the proceeds of the insurance shall be payable."

In *Holland* the court also recognized that the beneficiary had a right in the executed contract which was subject to defeat only by a change of beneficiary which had been

executed in accord with the terms of the insurance contract: "In that contract Anna Laura, the beneficiary, had such an interest as that she had, and has, the right to insist that in order to cut her out, the change of beneficiary should be made in the manner provided in the contract." 111 Ind. 127, 12 N.E. 116. And in *Borgman v. Borgman*, (1981) Ind.App., 420 N.E.2d 1261, *trans. denied*, this court held that an interpleader action by a life insurance company does not affect the parties' rights.

Clearly it is in the interest of insurance companies to require and to follow certain specified procedures in the change of beneficiaries of its policies so that they may pay over benefits to persons properly entitled to them without subjection to claims by others of whose rights they had no notice or knowledge. Certainly it is also in the interest of beneficiaries themselves to be entitled to prompt payment of benefits by insurance companies which do not withhold payment until the will has been probated in the fear of later litigation which might result from having paid the wrong party. The legislature reflects this concern with certainty in the area of insurance beneficiaries in Ind.Code 27–1–12–14 by permitting changes of beneficiaries in insurance policies upon written notice to the insurance company when accompanied by the policy. Finally, society's interest in the conservation of judicial energy and expense will be served where the rule and its limited exceptions are clearly stated and rigorously applied.

Appellants argue that if, indeed, the will alone is not enough to effect the intended change, the added circumstance of divorce, "along with other supporting circumstances," (Appellants' brief at 10) which they fail to set forth, should be sufficient to substantiate the fact that Douglas intended Margaret and Daniel to receive his insurance money. To give effect to such intent they feel is a logical extension of *Modern Brotherhood* and would not abrogate existing Indiana law. We disagree.

It is a truism that in appeals from the granting of summary judgment we shall construe all materials on file in favor of appellants and resolve all doubts against the appellees to determine if a genuine issue of material fact exists. *Kendrick Memorial Hospital v. Totten*, (1980) Ind.App., 408 N.E.2d 130; *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154. Nevertheless, unsupported allegations in a brief are not viewed as facts. And, even though a party against whom a motion for summary judgment is made need not present his entire case in a summary judgment proceeding, he must come forth with specific facts to show that there is a genuine issue as to the material facts. *Associates Financial Services Co. of Kentucky v. Knapp*, (1981) Ind.App., 422 N.E.2d 1261; *Moll v. South Central Solar Systems, supra.* The rule in Indiana, as we have stated several times, recognizes substantial compliance with the requirements of the policy as sufficient to change a beneficiary so long as "the insured has done everything in his power to effect such a change." *Borgman v. Borgman, supra*, 420 N.E.2d at 1265. *Accord: Isgrigg v. Schooley*, (1890) 125 Ind. 94, 25 N.E. 151; *Hoess v. Continental Assurance Co.*, (1960) 130 Ind.App. 562, 164 N.E.2d 125; *Elliott v. Metropolitan Life Insurance Co.*, (1946) 116 Ind.App. 404, 64 N.E.2d 911.

Under the law of Indiana, therefore, in order for appellants to have defeated the motion for summary judgment in this case they must have made some showing that the insured had done all within his powers or all that reasonably could have been expected of him to comply with the policy provisions respecting a change of beneficiary, but that through no fault of his own he was unable to achieve his goal. Here there is no such indication or implication. Douglas was divorced in March of 1965 and remarried in December 1965. He was notified in July 1965 of the change in his policy, but took no action. A son was born of his second marriage. Eleven years after his divorce Douglas attempted to change the beneficiary of his insurance policy by a holographic will, but did not notify Equitable. He then lived three years after making that

will. There is no indication that Douglas took any action in the fourteen years between his divorce from Doris and his death, other than the making of the will, to change the beneficiary of his life insurance policy from Doris to Margaret and Daniel. Surely, if Douglas had wanted to change the beneficiary he had ample time and opportunity to comply with the policy requirements. Nothing in the record suggests otherwise.

In *Hoess v. Continental Assurance Co.,* *supra,* the court was presented with a situation in which a decedent likewise had failed to name his new wife as the beneficiary of his life insurance policy after his divorce. However, prior to his death, decedent orally requested his agent to change the beneficiary, but the change was not made. The policy required written notification. The court held:

"And where the policy or the contract of life insurance contains the right of the insured to change the beneficiary, such right must be exercised in the manner provided in such policy or contract. *Indiana, etc., Life Ins. Co. v. McGinnis,* 1913, 180 Ind. 9, 101 N.E. 289, 45 L.R.A., N.S., 192. If the decedent knowing who was designated as beneficiary, desired to change, it was incumbent upon him to exercise his right to change the beneficiary as the master policy provided under Section 9 quoted above. A mere oral request in and of itself is not sufficient to comply with the terms of the policy governing a change of beneficiary.

This is not such a case where the insured has done all in his power which he can do to change the beneficiary, and then some intervening cause or his death before the change is effective has occurred preventing the effectuation of the change so that a court of equity will decree that to be done which ought to be done.

Nor does the fact that the appellee is designated as 'wife' alter the situation. The term 'wife' is merely descriptio personae.

'* * * and the fact that the one who otherwise answers the description does not, or did not at the inception of the insurance, have the legal status of wife of the insured does not prevent her from taking as beneficiary if it is otherwise clear that she is the person intended, assuming that she is eligible to designation as beneficiary and that the misdescription of her as "wife" does not amount to a breach of warranty or misrepresentation avoiding the insurance.' 29 Am.Jur., Insurance, § 1292, p. 965.

And while the rights of a divorced beneficiary may be terminated by facts in addition to the divorce, in the absence of a policy provision to the contrary or regulation thereof by statute, the rights of a beneficiary under a policy of life insurance are not affected merely by the fact that the beneficiary named thereunder has been divorced from the assured subsequent to the issuance of the policy. 29 Am., Jur., Insurance, § 1309, p. 977." 164 N.E.2d 129.

■ We may be sympathetic to the cause of the decedent's widow and son, and it might seem that a departure from the general rule in an attempt to do equity under these facts would be noble. Nevertheless, such a course is fraught with the dangers of eroding a solidly paved pathway of the law and leaving in its stead only a gaping hole of uncertainty. Public policy requires that the insurer, insured, and beneficiary alike should be able to rely on the certainty that policy provisions pertaining to the naming and changing of beneficiaries will control except in extreme situations. We, therefore, invoke a maxim equally as venerable as the one upon which appellants rely in the determination of this cause: Equity aids the vigilant, not those who slumber on their rights.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.