986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of MODULAR STRUCTURES, INCORPORATED, Debtor
Appeal of Dayne Tennell and Robin L. Tennell.
 No. 92-1564.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 30, 1992.
Decided Jan. 22, 1993.
 
 Before COFFEY and EASTERBROOK, Circuit Judges, and LAY, Senior Circuit Judge.*
 
 ORDER
 
 1
 Cecil C. Tennell (Cecil) was the president and sole shareholder of Modular Structures, Inc. (Modular). In October 1983, Modular obtained a life insurance policy on Cecil with Fidelity Bankers Life Insurance Company (Fidelity). At that time, the beneficiary was the company itself, Modular. In order to change beneficiaries, the policy provided as follows:
 
 
 2
 CHANGE OF OWNER OR BENEFICIARY. The owner may name a new Owner or change the Beneficiary, if revocable, while the Insured is alive by sending a written notice to the Home Office. Upon receipt by the Company, the change will take effect as of the date the notice was signed.
 
 
 3
 In November 1983, Cecil contacted his insurance broker, Gregory McCall, to change the beneficiary designation on the policy. Cecil alone signed the change of beneficiary election form, naming his two natural sons, Dayne and Robin Tennell, and his six stepchildren (the McDonoughs) as beneficiaries. He then gave the form to McCall, who forwarded it to a Fidelity general agent, James Sullivan. Sullivan sent the form to Fidelity. Fidelity rejected the form, however, because Modular owned the policy, and therefore Modular alone had the power to change the beneficiary election. Thereafter, Cecil, as Modular's president, and Dayne Tennell, as its secretary, signed the change of beneficiary election form on behalf of Modular. Fidelity accepted this change of beneficiary election and noted the new beneficiaries on the endorsement dated January 3, 1984.[1]
 
 
 4
 Sometime prior to May 1984, Cecil and the stepchildren's mother divorced, and Cecil decided to remove his stepchildren as beneficiaries. As he had done some seven months earlier, Cecil spoke with his insurance broker, Gregory McCall, and indicated his desire to change the beneficiaries to only his natural sons. Cecil subsequently sent McCall a marked-up copy of the endorsement that had been issued January 3, 1984. On it, Cecil had crossed out the stepchildren's names and had changed the percentage of the proceeds to 75% to Dayne Tennell and 25% to Robin Tennell. McCall told Cecil that this would not be sufficient to change the beneficiaries, but that he would get the necessary form to Cecil.
 
 
 5
 On June 4, 1984, McCall wrote a note to his secretary, asking her to take care of obtaining the appropriate change of beneficiary form. The next day, the secretary typed a note to Jim Sullivan, Fidelity's general agent, requesting that a change of beneficiary form be sent to Cecil Tennell. The letter also indicated the changes Cecil wanted.
 
 
 6
 Sullivan could not recall receiving this letter nor could he recall responding to it. He testified that he had searched his files and could not find the original of the letter. In fact, no additional action was ever taken on this matter by McCall, McCall's secretary or Sullivan, and no formal change of beneficiary election form was ever executed.
 
 
 7
 Six years later, on February 15, 1990, Cecil died. The parties agree that there were no further communications regarding Cecil's desire to change the beneficiaries. Cecil did not contact McCall, Sullivan or Fidelity to ask about the form or to confirm the status of the beneficiaries under the policy. Found among his papers, however, was a copy of the 1984 endorsement on which Cecil had written, "This copy no good" and "beneficiary change after June 8, 1984, to Dayne and Robin only."
 
 
 8
 Shortly after Cecil's death, Modular filed for Chapter 7 bankruptcy relief. Fidelity filed an interpleader action in the bankruptcy court to determine the proper beneficiaries of the policy.[2] The bankruptcy judge concluded that Cecil Tennell had done everything in his power to effect the change of beneficiary designation to his two natural sons. Applying equitable principles, the judge held that the Tennells were the sole beneficiaries. The district court reversed the bankruptcy court, finding that Cecil did not take sufficient steps "to give his intent equitable vitality." McDonough v. Tennell (In re Modular Structures, Inc.), No. IP 91-387-C (S.D.Ind. Feb. 26, 1992). He remanded the matter to the bankruptcy court with instructions to enter judgment distributing the insurance proceeds according to the policy endorsement dated January 3, 1984. This appeal followed.
 
 II. DISCUSSION
 
 9
 The Tennells raise two arguments on appeal. First, they contend that the district court did not give proper deference to the bankruptcy judge by improperly substituting its own factual findings for that of the bankruptcy judge. See In re Neis, 723 F.2d 584, 589 (7th Cir.1983). We do not agree. The district court did not challenge the bankruptcy court's findings of fact, but rather its conclusions of law from those findings. Thus, the proper standard of review was de novo. See Taylor & Gaskin, Inc. v. Chris-Craft Indus., 732 F.2d 1273, 1277 (7th Cir.1984). The district court properly applied the de novo standard to the legal effect to be drawn from the bankruptcy judge's findings of fact.
 
 
 10
 The Tennells also argue that the district court incorrectly interpreted Indiana case law determining when a court in equity may act to complete a change of beneficiary even though it does not meet the technical provisions of the insurance policy. The general rule in Indiana is that a change of beneficiary must be exercised in the manner provided in the policy. Hoess v. Continental Assurance Co., 164 N.E.2d 125, 129 (Ind.Ct.App.1960). A change of election will be enforced absent complete, strict compliance with the policy requirements, however, so long as "the insured has done everything in his power to effect such a change." Cook v. Equitable Life Assurance Soc'y, 428 N.E.2d 110, 115 (Ind.Ct.App.1981); Borgman v. Borgman, 420 N.E.2d 1261, 1265 (Ind.Ct.App.1981). In those situations, a court will apply equitable principles to complete an otherwise incomplete change of beneficiary and make the intended beneficiaries the recipients of the proceeds. Borgman, 420 N.E.2d at 1265.
 
 
 11
 As the district court noted, however, this exception does not give the courts license to "give effect to every insured's expressed or implied desires regarding beneficiary changes." The question is not whether there was substantial evidence that the insured desired to change beneficiaries, but whether sufficient steps were taken to change the beneficiary so as to invoke the aid of equity in completing the change.
 
 
 12
 We agree with the district court that there were not. Cecil took two steps to change the beneficiary of the insurance policy: he contacted his insurance broker, Gregory McCall, by telephone, and subsequently he sent him a marked-up copy of the old endorsement. However, McCall specifically informed Cecil that these actions did not constitute the change. Moreover, the policy provided that "[t]he owner may ... change the Beneficiary ... by sending written notice to the Home Office" (emphasis added). Here, the owner of the policy was the company, Modular. When the owner was a corporation, Fidelity required two corporate officers to sign the change of beneficiary election form. Cecil was well aware of this requirement. Seven months before, he had attempted to change the beneficiaries from Modular to his sons and his stepchildren with only his signature on the change of election form. Fidelity had rejected this form. Thereafter, Cecil and his son had executed the form in their capacities as corporate officers, and Fidelity had then accepted the form. Cecil therefore knew that his acts alone were insufficient to change the beneficiary designation, and yet he did not follow up on the forms with McCall, Sullivan or Fidelity in the next six years. Under these facts, it is unreasonable to conclude that Cecil had done everything in his power to effect the change.
 
 
 13
 The Tennells contend that this case is analogous to Borgman v. Borgman, 420 N.E.2d 1261 (Ind.Ct.App.1981), in which the Indiana Court of Appeals affirmed a trial court's determination that the insured had done everything within his power to change the beneficiary. In that case, Borgman wanted his fiancee to be the beneficiary under his life insurance policy, but his agent recommended that Borgman make his father the beneficiary until after the marriage. Shortly after the marriage, the agent met with Borgman, who again indicated his wish to change the beneficiary. However, Borgman did not execute the form because his wife was not present, and he wanted to talk with her about their insurance needs first. Borgman died shortly thereafter, but between the time of his meeting with the agent and his death, he attempted on several occasions to contact his agent to execute the beneficiary change. The Borgman court focused on the fact that death intervened to frustrate the insured's intent. Id. at 1265-66.
 
 
 14
 We do not agree that Borgman is on point. Here, unlike in Borgman, death did not intervene to prevent Cecil from changing the beneficiaries. It is true that McCall promised to send Cecil the necessary form, and Cecil may have waited for a time to receive it. However, six years lapsed between Cecil's contacting McCall and Cecil's death. As the district court succinctly stated, "Cecil had the ability to contact Fidelity directly (he had done so in the past); Cecil knew that the change must come from the corporation; and, he could have made some inquiry regarding the status of the paperwork."
 
 
 15
 We recognize that this decision may contradict Cecil's intent. But, as the Indiana courts have recognized--
 
 
 16
 [I]t might seem that a departure from the general rule in an attempt to do equity under these facts would be noble. Nevertheless, such a course is fraught with the dangers of eroding a solidly paved pathway of the law and leaving in its stead only a gaping hole of uncertainty. Public policy requires that the insurer, insured, and beneficiary alike should be able to rely on the certainty that policy provisions pertaining to the naming and changing of beneficiaries will control except in extreme situations.
 
 
 17
 Cook v. Equitable Life Assurance Soc'y, 428 N.E.2d 110, 116 (Ind.Ct.App.1981). To hold in favor of the Tennells would create the kind of uncertainty that the courts have attempted to prevent in this area of the law. Accordingly, the order of the district court is affirmed.[3]
 
 
 
 *
 Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation
 
 
 [1]
 The endorsement provided that the insurance proceeds should be distributed as follows: 40% to Dayne L. Tennell (son); 10% to Robin L. Tennell (son); 7 1/2% to Martin W. McDonough (stepson); 7 1/2% to Robert E. McDonough (stepson); 5% to Joy D. McDonough (stepdaughter); remaining 5% divided equally between John E. McDonough, Tina L. Morgan and Yvonne Perdue (stepchildren)
 
 
 [2]
 This court has appellate jurisdiction under 28 U.S.C. § 158(d) because the entire dispute concerning the parties to the appeal has been resolved. See In re Morse Elec. Co., 805 F.2d 262 (7th Cir.1986). Nothing remains to be resolved in the bankruptcy--which ensures appellate jurisdiction but raises a question about the jurisdiction of the bankruptcy court. None of the persons now claiming the proceeds of the insurance policy is, or ever was, a creditor of the estate in bankruptcy. Fidelity commenced the interpleader action in the bankruptcy court for two reasons: first, in 1985, the debtor executed an assignment of the life insurance policy as collateral to secure a debt owed Merchant's National Bank, and Merchant's therefore claimed an interest in the proceeds; second, the bankruptcy trustee asserted an interest in the death benefit. However, these interests were fixed by settlement before trial. The bankruptcy judge's decision thereafter could not affect the estate or the distribution to creditors. Cases such as Pettibone Corp. v. Easley, 935 F.2d 120 (7th Cir.1991), and In re Xonics, Inc., 813 F.2d 127 (7th Cir.1987), imply that the bankruptcy judge should have relinquished jurisdiction. Nonetheless, because this interpleader action has the minimal diversity required by 28 U.S.C. § 1335(a)(1), federal jurisdiction remains appropriate. Cf. In re Chicago, R.I. & Pac. R.R., 794 F.2d 1182, 1186-88 (7th Cir.1986). Our disposition of this appeal would not change if we evaluated the judgment under review as an original decision by the district judge, so we let the matter drop
 
 
 [3]
 The bankruptcy judge and the district court also analyzed whether the letter from McCall's secretary to Sullivan, Fidelity's general agent, constituted "written notice" to the Fidelity "Home Office" to effectuate the beneficiary change. The district court found that it did not. We need not reach this issue because appellants did not raise it in their brief