Carolyn BOWERS, Appellant–
Third Party Defendant,

v.

Robert KUSHNICK, et al., Appellee–
Third Party Plaintiff.

No. 45A04–0004–CV–168.

Court of Appeals of Indiana.

Feb. 22, 2001.

Ray L. Szarmach, Szarmach & Fernandez, Merrillville, IN, Attorney for Appellant.

Mike Bosch, Hammond, IN, Elena Becker, Chicago, IL, Sharon Stanzione, Merrillville, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge

Carolyn Bowers appeals the trial court's grant of third-party defendant Robert Kushnick's motion for summary judgment. She raises two issues on appeal, the first of which we find dispositive and restate as: Whether the insured decedent clearly intended to change beneficiaries and whether she did everything she could reasonably do to accomplish that change.

We answer in the negative and affirm the trial court.[1]

### Facts and Procedural History

Katherine Kushnick owned a $40,000 life insurance policy issued by Fortis Benefits Insurance Company that she obtained through her employment with the Visiting Nurse Association (VNA) of Porter County, Indiana, Inc. It is undisputed that, shortly before her death, Katherine had misgivings about having recently adopted

---

1. Oral argument was heard at Taylor University in Fort Wayne, Indiana, on November 16, 2000.

a teenage daughter with her husband Robert. Specifically, Katherine disapproved of the possibility that her adopted daughter Rebecca, Rebecca's natural mother or Rebecca's siblings would receive the policy proceeds. Katherine's sister, Jane Amrai, was aware of Katherine's concerns.

Slightly more than one month before succumbing to cancer, Katherine obtained a change of beneficiary form from her hospice nurses. Katherine gave the form to Amrai and asked her to type in the information necessary to change the beneficiary of her policy from her husband to her niece Carolyn Bowers (Amrai's daughter) and a family friend. After Amrai prepared the form and returned it to Katherine, neither Amrai nor Katherine raised the subject again.

In the months preceding her death, Katherine made multiple bequests of her personal property to friends and family. Amrai assisted her by making typewritten entries into a tabbed binder to reflect Katherine's wishes. Katherine frequently reviewed the entries in the binder, making additions and modifications to her desired bequests. It was in this cogent and highly organized context that Katherine told Amrai that she (Katherine) had taken care of the insurance and later handed Amrai a sealed envelope with the simple, parol instruction to give the envelope to Barbara Gilbertson of the VNA "if something happens." R. at 308. Unbeknownst to Amrai, the sealed envelope contained the change of beneficiary form executed by Katherine.

Katherine died on July 12, 1996. At Katherine's wake, Amrai delivered the change of beneficiary form still sealed in the envelope to Gilbertson. Robert submitted his claim for the policy proceeds on July 24. Fortis received Katherine's change of beneficiary form on July 25. The family friend, who was named as co-beneficiary with Bowers, disclaimed her interest on September 20, 1996.

Bowers filed a claim against Fortis for the proceeds. Fortis interpleaded Robert, paid the $40,000 into the Clerk's office and was dismissed from the case. Both Bowers and Robert filed motions for summary judgment. The trial court granted Robert's motion, ruling that Katherine did not substantially comply with the requirements for changing the policy beneficiary. Bowers appeals.

Bowers argued in the trial court and now asserts that Katherine substantially complied with policy requirements, in that she signed and dated the appropriate change of beneficiary form and gave it to Amrai to give to Gilbertson. Bowers emphasizes that Katherine was for all practical purposes incapacitated, although not incompetent. She never rescinded her direction to Amrai to give the envelope to Gilbertson, and "died believing" that Bowers and the family friend would receive the policy proceeds. Appellant's Brief at 8.

On the other hand, Robert argued in the trial court and now contends that Katherine's intent was not clearly expressed and that she did not do everything in her power to substantially comply with the insurance policy requirements for changing beneficiaries.

## Discussion and Decision

On appeal, the standard of review of a summary judgment motion is the same standard used in the trial court. Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). The review of a summary judgment motion is limited to those materials designated to the trial court. *Alexander v. Scheid*, 726 N.E.2d 272, 275 (Ind.2000); Ind. Trial Rule 56(H). In their cross-motions for summary judgment and in this appeal, both parties concede that there are no genuine issues of material fact. We therefore limit our review to whether the trial court properly applied the law to the undisputed facts.

In the instant case, the language of the policy is clear and unambiguous. The policy provides that:

You may change the beneficiary at any time. Any request to name or change the beneficiary must be in writing on a form acceptable to us and signed by you. *After we receive the request at our home office, the change will take effect on the date you signed it.* A beneficiary change will be without prejudice to us for any payment we made before we receive notice in our home office.

R. at 63 (emphasis added). Neither party has challenged the clarity of this policy provision. Instead, the parties' dispute lies with the relation back clause in the policy, whereby Fortis may permit a change of beneficiary subsequent to Katherine's death.

■■■ The interest of an insurance policy beneficiary vests at the time of the insured's death. *Metropolitan Life Ins. Co. v. Tallent,* 445 N.E.2d 990, 992 (Ind. 1983); *Quinn v. Quinn,* 498 N.E.2d 1312, 1313 (Ind.Ct.App.1986); *Wolf v. Wolf,* 147 Ind.App. 240, 243, 259 N.E.2d 93, 95 (1970); 4 *Couch on Insurance 3d* § 58.16 (1997); 2 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 921 (2d ed.1966). This interest is defeated only by a change of beneficiary form executed in accordance with the terms of the policy. *Quinn,* 498 N.E.2d at 1313. However, if the insured has done everything within her power to effect the change of beneficiary, the rule recognizes substantial compliance with policy requirements as sufficient to change the beneficiary. *Id.*

Although the concept of "substantial compliance" is based upon the majority "liberal rule" to which Indiana courts have historically subscribed, in our state's caselaw "substantial compliance" has evolved into a hazy, catch-all rubric, lacking any clear-cut standard for analysis. Looking not only to our own caselaw, but to other jurisdictions utilizing the majority rule, we find that there are two salient elements for

consideration that appear throughout contested change of beneficiary cases: (1) Whether the insured clearly intended to change the beneficiary; and (2) Whether the insured did everything reasonably within his or her power to effect the change. *United Services Life Ins. v. Moss,* 303 F.Supp. 72, 75 (W.D.Va.1969).

■■■ This analysis is based on equitable principles. "Equity regards that as done which should have been done and if the insured has done all he could to comply with the provisions of the policy, equity will give effect to the intent of the insured." *United Services,* 303 F.Supp. at 76. When we base our analysis on these elements, intent and effort, it becomes readily apparent that Katherine's executed change of beneficiary form must fail as a matter of law for several reasons.

First, Katherine never clearly expressed her intent to change beneficiaries. The policy language required receipt of the completed form by the home office before it was effective. However, Fortis did not receive the change of beneficiary form before Katherine's death or before Robert's claim was received. Although the relation back clause prevents this in and of itself from being fatal to Bowers' claim, it nevertheless contributes to the conclusion that Katherine did not do all that she could do either to express her intent to or to actually change her beneficiary.

Katherine also never expressed the intent to change beneficiaries to the home office or any other representative of the issuing carrier. Although Bowers contends that Katherine was physically incapacitated at all relevant times, Amrai testified that Katherine telephoned her on the same morning that she passed away. This demonstrates that Katherine actually had the ability to initiate meaningful communication up to the time of her death. At the very least, Katherine could have and should have instructed Amrai to mail or otherwise deliver the completed form to the VNA insurance office and could have

confirmed such delivery with Amrai before her death. Had the form been placed in the mail or other objective transit to Katherine's employer or to Fortis during her lifetime, her alleged intent would have been clear. *See Shenandoah Life Ins. Co. v. Harvey,* 242 F.Supp. 680 (D.Md.1965).

This is not a case where the insured's clearly-expressed intent was frustrated by the carrier or its agent, warranting equitable intervention. *See Borgman v. Borgman,* 420 N.E.2d 1261 (Ind.Ct.App.1981); *Saiter v. Miller,* 108 Ind.App. 373, 27 N.E.2d 900 (1940). Likewise, it is not a case where the insured verbally expressed his intent to the person in charge of benefits at his employer's shortly before his death, in which equitable relief was refused. *Hoess v. Continental Assurance Co.,* 130 Ind.App. 562, 164 N.E.2d 125 (1960). "[T]he courts will not complete for an individual that which he [or she] reasonably and without justifiable excuse could have accomplished." *United Services,* 303 F.Supp. at 76.

In addition, Amrai did not know, either directly or inferentially, that the sealed envelope given to her by Katherine to give to Gilbertson "if something happens" contained the executed change of beneficiary form. R. at 316–17. Given all of these circumstances, we hold that Katherine's expression of intent was inadequate, as a matter of law, to effect a change of beneficiary.

Similarly, Katherine did not do all that she could to effect the change. Instead, she attempted to maintain some control over the change of beneficiary form by giving the completed form to Amrai in a sealed envelope without telling Amrai what the envelope contained, and with only the parol instruction for Amrai to give the envelope to Gilbertson "if something happens." Simply said, Katherine left too much undone that could have been done.

Bowers also contends that, under any circumstances, the specific policy language allows for a change of beneficiary if a properly executed form is submitted subsequent to the insured's death: "After we receive the request at our home office, the change will take effect on the date you signed it." R. at 63. However, to ignore the critical importance of the insured's intent and effort creates great uncertainty regarding who the proper beneficiary or beneficiaries might be for any life insurance policy.

In *United Services,* 303 F.Supp. at 72, the insured purportedly executed a change of beneficiary form in favor of his second wife. The policy provision in the *United Services* case was similar to the one at issue here:

Unless otherwise provided, *any beneficiary named herein may be changed at any time* on written notice thereof filed at the Home Office of the Company. *Such change shall take effect* only upon its endorsement on the policy by the Company but upon such endorsement, the change will relate back to and take effect *as of the date said written notice of change was signed whether the Insured be living at the time of such endorsement or not,* but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office.

*Id.* at 74. Although the insured purportedly executed the form, he never mailed the form to the home office. The form was later "discovered" by his wife and submitted nearly two and a half years after the insured's initial request for the form. *Id.* at 76. The *United Services* court invalidated the executed change of beneficiary form on the grounds of unclear intent and the fact that the insured had not done all that he could have done to accomplish the change. *Id.* We reach the same conclusion here.

We, like the parties, find no genuine issues of material fact. As a matter of law, Katherine did not adequately express her intent to change beneficiaries and did not do everything she could reasonably do to complete the delivery of the executed

change of beneficiary form in order to substantially comply with the policy's requirements. The trial court's grant of Robert's motion for summary judgment is affirmed.

Affirmed.

MATTINGLY, J., concurs.

ROBB, J., dissents and files separate opinion.

ROBB, Judge, dissenting

I respectfully dissent from the majority's conclusion that the trial court properly granted summary judgment in favor of Katherine's husband, Robert. I believe that a genuine issue of material fact exists as to whether Katherine substantially complied with the terms of the life insurance policy in her attempt to effect to change the beneficiary.

Generally, a beneficiary's interest in the proceeds of an insurance policy vests at the time of death of the insured. *Wolf v. Wolf*, 147 Ind.App. 240, 259 N.E.2d 93, 95 (1970). We have previously explained:

Where no power of disposition is reserved in the insured in the ordinary life insurance policy, the beneficiary, upon the issuance and acceptance of the policy, acquires a vested right, which cannot be impaired without the beneficiary's consent. Where, however, by the terms of the policy the right is reserved to the assured to change the beneficiary at will, then the original beneficiary acquires no vested interest in the policy, and has but a mere expectancy until after the death of the assured.

*Burnett v. Mutual Life Ins. Co.*, 66 Ind. App. 280, 114 N.E. 232, 234–35 (1916), *trans. denied.* Although Robert was listed

as the beneficiary, the insurance policy allowed Katherine to change the beneficiary at will. *See* R. 63. Where the policy or the contract of life insurance contains the right of the insured to change the beneficiary, such right must be exercised in the manner provided in such policy or contract. *Hoess v. Cont'l Assurance Co.*, 130 Ind.App. 562, 164 N.E.2d 125, 129 (1960). Therefore, an examination of the insurance policy must be made in order to determine the procedure for effecting a change of beneficiary.

The change of beneficiary provision[2] of the insurance policy provides in pertinent part that:

You may change the beneficiary at any time. Any request to name or change the beneficiary must be in writing on a form acceptable to us and signed by you. After we receive the request at our home office, the change will take effect on the date you signed it. A beneficiary change will be without prejudice to us for any payment we made before we receive notice in our home office.

R. 63. In Indiana, contracts for insurance are generally subject to the rules of interpretation applicable to other contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). As such, if the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* To apply the rules of construction favoring the non-drafter of insurance contract terms, the language must be ambiguous or of doubtful meaning. *Id.* An insurance policy is ambiguous only if reasonable persons may honestly differ as to the meaning of its language. *Id.* Furthermore, terms in an insurance contract may not be construed in a manner which is repugnant to the purposes of the policy as a whole. *Property Owners Ins. Co. v.*

---

2. I note that it is in the interest of insurance companies to require and to follow certain specified procedures in the change of beneficiaries of its policies so that they may pay over benefits to persons properly entitled to them without being subject to claims by others of whose rights they had no notice or knowledge. *Cook v. Equitable Life Assurance*

*Society of U.S.*, 428 N.E.2d 110, 115 (Ind.Ct. App.1981). Moreover, it is in the interest of beneficiaries themselves to be entitled to prompt payment of benefits by insurance companies which do not withhold payment until the will has been probated in the fear of later litigation which might result from having paid the wrong party. *Id.*

*Hack,* 559 N.E.2d 396, 402 n. 5 (Ind.Ct. App.1990).

According to the terms of the insurance policy, a change of beneficiary is effected when it: (1) is in writing; (2) in an acceptable form; (3) signed by the insured; and (4) received by the home office.[3] R. 63. The plain and unambiguous language of the insurance policy does not require that the change of beneficiary be submitted to the home office of the insurance company prior to Katherine's death. In fact, the insurance policy explicitly states that after the home office of the insurance company receives the change of beneficiary, the form will be backdated to the date Katherine signed the change of beneficiary. *See id.* Therefore, I believe that a change of beneficiary is valid under the terms of the insurance policy if the home office of the insurance company receives it within a "reasonable time"[4] after Katherine's death. I must therefore examine the facts and circumstances of the present case in order to determine whether a genuine issue of material fact exists regarding whether Katherine substantially complied with the terms of the insurance policy in her attempt to effect a change of beneficiary.

We have previously stated that substantial compliance with the requirements of an insurance policy is sufficient to change a beneficiary so long as the insured has done everything within his power to effect such a change. *Quinn v. Quinn,* 498 N.E.2d 1312, 1313 (Ind.Ct.App.1986). Whether an insured has done everything within his power is a question of fact.

*Borgman v. Borgman,* 420 N.E.2d 1261–1263 (Ind.Ct.App.1981), *trans. denied.* Here, Katherine obtained a change of beneficiary from her hospice nurses and directed her sister to type out the change of beneficiary from her husband to her niece. Prior to her death, Katherine gave the change of beneficiary in a sealed envelope to her sister with instructions to give the envelope to Gilbertson of the VNA "if something happens." R. 308. The VNA was her previous employer through whom she had obtained the insurance. Thirteen days after Katherine's death and prior to the insurance company paying the proceeds to someone else, her sister gave the sealed envelope containing the change of beneficiary form to Gilbertson. The majority may well be concerned with finding a change of beneficiary that has not been "delivered" to anyone. I believe that these are not the facts we have here but would certainly be a factual question of intent of the insured or substantial compliance with the contract. Because the insurance policy did not require that the home office of the insurance company receive the change of beneficiary within Katherine's lifetime, I believe that the question of whether Katherine substantially complied with the terms of the insurance policy is for the finder of fact.

I would reverse the grant of summary judgment in favor of Robert.

---

**3.** I note that Indiana Code section 27–1–12–14(a) provides that:

Any person whose life is insured by any life insurance company may name as his payee or beneficiary any person or persons, natural or artificial, with or without an insurable interest, or his estate. Such designation at the option of the insured may be made either revocable or irrevocable, and the option elected shall be set out in and shall be made a part of the application for the certificate or policy of insurance. When the right of revocation has been reserved, the person whose life is insured, subject to any existing assignment or policy, may at any time designate a new payee or beneficiary, with or without reserving the right of revocation, by filing written notice thereof at the home office of the corporation, accompanied by the policy for suitable endorsement thereon.

**4.** I believe that equity demands the "reasonable time" requirement. It would be inequitable to consider a change of beneficiary valid if the home office of the insurance company received the change of beneficiary after a significant time period had expired since the insured's death.